Jack MARTINO, Leigh J. Cronland, Terry Rivera, Jose Herrera, individually and on behalf of others similarly situated, Plaintiffs,

v.

Jim CAREY, Sheriff of Umatilla County, Oregon; Woody Starrett, Bob Ten Eyck, and Bud Draper, County Commissioners, Umatilla County, Oregon, all sued in their individual and official capacities and their successors in office, Defendants.

Civ. No. 81–751–RE.

United States District Court, D. Oregon.

June 15, 1983.

Roy S. Haber, Eugene, Or., for plaintiffs.

Harold A. Fabre, Douglas R. Nash, Pendleton, Or., for defendants.

OPINION

REDDEN, District Judge:

This is the attorney's fees phase of a civil rights case challenging conditions of confinement at the Umatilla County Jail in Pendleton, Oregon. In my Opinion of February 1, 1983, I ruled in favor of the plaintiff class on all issues, *see Martino v. Carey,* 563 F.Supp. 984 (D.Or.1983). I allowed the defendants to propose a plan for bringing the jail into compliance with constitutional standards. On April 1, 1983, I entered an Order and Judgment requiring defendants to take certain measures to relieve violative conditions at the jail. In my discussion which follows, I presuppose a certain familiarity with the Opinion of February 1, 1983.

A very full and complete evidentiary record was generated on the attorney's fees motion in this case. I held a hearing and took testimony on May 13, 1983. I also received affidavits from leading members of the legal profession in Oregon, and reviewed the deposition and time records of plaintiffs' attorney. I find that a very substantial award is necessary in this case in order to compensate the plaintiffs' attorney for his time necessarily spent on this case, and to encourage members of the bar to take such cases in the future.

 I have considered in the first instance the twelve factors originally set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717–719 (5th Cir.1974), which were adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), and which were recently cited with approval in *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), at note 2. I have also included an additional factor.[1] That factor requires consideration of whether plaintiffs' counsel acted expeditiously and professionally. In a case such as this, where many, many hours were expended, it is necessary to make such a de-

termination. If plaintiffs' counsel is found to have wasted time, or delayed the proceedings, then compensation will necessarily be adjusted downward. This, and the other factors will be discussed below.

1) *The Time and Labor Required*

I will discuss several factors relevant to this inquiry in my discussion of factor number thirteen, *infra.* I do find that the time expended was necessarily expended. The complaint alleged that virtually every condition of confinement was unconstitutional. The defendants litigated each allegation, including those which had previously been remedied upon the filing of the action. Given the vigorous and complete defense posture, the plaintiffs were necessarily put to their proof and, indeed prevailed.

At oral argument on the motion for attorney's fees, defendants pointed out that plaintiffs' attorney typed his own rough draft documents and, very rarely, the final document. Their contention was that plaintiffs' attorney should have hired secretarial help to do this work, but in fact it appeared that plaintiffs' attorney's method was no more time consuming than any more traditional practice such as dictation and revision. I find that plaintiffs' attorney reasonably expended 977.35 hours on this case.

2) *The Novelty and Difficulty of the Questions*

This was one of a number of suits in Oregon, Washington and California which followed upon the Ninth Circuit's decision in *Hoptowit v. Ray,* 682 F.2d 1237 (9th Cir.1982). An analysis of that opinion demonstrates the complexity of the law in this area. This is a "jail case" and therefore requires resolution of issues affecting both pretrial detainees as well as sentenced offenders.

Although the courts have written extensively in this area, the questions remain difficult and each case presents novel issues.

---

**1.** This, or a similar "factor 13" has been used by Judge Panner of this District and I choose to consider it here.

In this suit, essentially every condition of confinement was challenged and defended. The novelty, difficulty and complexity of the questions was great.

The resolution of this factor favors the plaintiffs.

### 3) *The Skill Requisite to Perform the Service Properly*

In light of the complexity and difficulty of these cases, a high level of skill is required of the lawyer who assumes the responsibility. This case required a high level of skill and a high level of skill was provided.

The resolution of this factor favors the plaintiffs.

### 4) *The Preclusion of Other Employment Due to Acceptance of the Case*

Plaintiffs' attorney was precluded from taking other cases due to the time demands of this case.

Resolution of this factor favors plaintiffs.

### 5) *The Customary Fee*

In considering the customary fee in a civil rights case governed by § 1988, the court must pay particular attention to the intent of Congress in passing § 1988. The Ninth Circuit has recognized the importance of the Senate Report which accompanied the enactment of Public Law 94–559, § 2 (Oct. 19, 1976), 90 Stat. 2641, which became 42 U.S.C. § 1988, *see American Constitutional Party v. Munro,* 650 F.2d 184 (9th Cir.1981) at p. 187 and notes 6–9. The Supreme Court repeatedly referred to that report in *Hensley v. Eckerhart, supra,* —— U.S. at ——, ——, ——, 103 S.Ct. at 1933, 1939, 1940 and note 7.

The Senate Report, S.Rep. No. 94–1011, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Admin.News 5908, indicates that Congress intended that courts award, generally, the highest rate charged in the area for complex antitrust and commercial litigation: "It is intended that the amount of fees awarded under S. 2278 [42 U.S.C. § 1988] *be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases . . .*" S.Rep. at 6, [1976] U.S. Code Cong. & Admin.News at 5913 (emphasis added).

▪ Thus, Congress has indicated that in cases under § 1988 the highest rate charged to private clients for complex federal cases in a particular legal market should presumptively apply. In Oregon, the highest rate customarily charged by private attorneys is $125 an hour. I award plaintiffs fees at this rate. As a matter of fact, all of the expert witnesses, including those called by *defendants,* testified that the appropriate hourly rate for plaintiffs' attorney was between $100 and $150 per hour. Therefore, in this case, I find no special factors which would warrant a departure from Congress' indication of its intent, *see Suzuki v. Yuen,* 678 F.2d 761, 764 (9th Cir.1982) (court may not reduce rate charged in community absent "logical, articulated" basis), *see also* Turner, "Attorney's Fees in Civil Rights Litigation," *reprinted in Federal Civil Rights Litigation 1982,* Practising Law Institute, 1982, at pp. 387, 390–392.

### 6) *Whether the Fee is Fixed or Contingent*

In these cases, an attorney will collect only if successful. In addition, she or he will collect only at the *end* of a long and time-consuming court process, and often he or she must await the decision on appeal. In light of the complexity of the law in this area, this contingency can be a significant deterrent to lawyers considering whether to take such cases. The fact that the attorney must provide service *now,* and meet expenses and payrolls *now,* while awaiting contingent payment at some date in the future, must be considered. The time value of money must also be considered. I find that these factors weigh in favor of plaintiffs.

### 7) *Time Limitations Imposed by the Client or the Circumstances*

In cases such as this, time limitations imposed by the client and the circumstances require much of all counsel. This case was

no exception. In addition, the court imposed time limitations and requirements which tended to make the case onerous for all. Rapid responses were sometimes required, and the trial days were extended ones.

These factors weigh in favor of the plaintiffs.

## 8) *The Results Obtained*

The results obtained for plaintiffs were excellent. Members of the class benefitted from both the filing and resolution of this suit. The relief accorded by the court, and the court's rulings in favor of plaintiffs on all litigated issues, confirmed the temporary relief plaintiffs received. This factor weighs heavily in favor of plaintiffs, see *Hensley v. Eckerhart, supra.*

## 9) *The Experience, Reputation and Ability of the Attorney*

Plaintiffs' attorney has long and significant experience in this legal specialty. His reputation in the field is excellent. This factor also weighs heavily in favor of plaintiffs. In addition, there is a need for such skilled practitioners in this District for handling of difficult civil rights cases. Any fee award must be an incentive, not a deterrent, to the entry of the most skilled members of the profession into this field.

## 10) *The Undesirability of the Case*

Although one might expect that society would accord a very high status to persons who undertake the defense of the constitutional rights of others, this is not the case in prison litigation. Public hostility can be a significant factor in deterring representation in these cases. Many prisoner cases are prosecuted *pro se* because lawyers are not willing to represent such plaintiffs. Congress has decreed that monetary compensation is a way to attract skilled and experienced counsel into the field. In this instance, the plaintiffs' case occasioned public hostility and adverse comment in Umatilla County. The court refers any reviewing court to the examples of press coverage attached to plaintiffs' motion for attorney's fees as an indication of the "undesirability" of the case in terms of public reaction. This factor weighs in favor of the plaintiffs.

## 11) *The Nature and Length of the Professional Relationship with the Client*

Members of the plaintiff class are not easy to represent. They do not tend to be the most attractive, intelligent or personable members of society. The attorney must frequently consult with his clients under the conditions which are the subject of this suit. This factor weighs in favor of plaintiffs.

## 12) *Awards in Similar Cases*

I have examined awards in this District and elsewhere. Cases such as this, where there was a challenge to the widest range of conditions, where there was great public hostility in the locality, and where the legal issues were as complex, are rare. The award in this case may, for the reasons previously discussed, exceed prior awards in this District. There are, however, substantial reasons for the amount of the award, and it is consistent with awards in similar cases.

## 13) *Conduct of the Case*

Plaintiff seeks compensation for a great number of hours—977.35. I look to the record to determine if plaintiffs' counsel wasted time, delayed proceedings or failed to act in an expeditious manner to conclude these proceedings. I find that this factor favors plaintiffs.

The expenditure of these hours by plaintiffs' attorney was necessary, albeit much of the time was spent because of defendants' tactics and style of defense.

In many instances, plaintiffs' attorney offered to expedite matters and spend fewer hours, but was rebuffed by the defendant.

At one point, plaintiffs suggested a course of action which likely would have rendered the trial and its preparation unnecessary. Plaintiffs suggested that the matter be stayed until the expansion of the facility was completed. Because the expan-

852

sion itself was specifically designed to overcome some of the complained-of conditions, I expressed a willingness to put the case on hold. The defendants would have been required to operate the facility under temporary court orders, many of which were already in place, and governed conditions which defendants had previously remedied on a voluntary basis. Defendants refused the stay, insisted upon a trial and demanded that it be a jury trial. Plaintiffs' attorney was required to spend some time in briefing the obvious as to the jury trial demand and then commenced to invest numerous hours preparing for and trying this case.[2]

The pretrial order in this case did not narrow issues or reflect cooperation between the parties. I find that this was the result of the defendants' attitude and tactics, and not that of the plaintiffs. Defendants often refused to agree to even the facts that were beyond dispute. As an example, defendants refused to agree, and required plaintiffs to prove such facts as: the floors of the cells were cement, that there was no medical examining room or infirmary in the facility, that the medical facility had not been state certified, that there was no mental health professional on the jail staff, that the jail did not have a sick call with an attending physician, that defendants had an architectural study done of the facility, that toilets were open to view, that the dormitory cells had five and six double bunk beds, that there were no desks or chairs in the cells and even that each dorm had a television set.

The above is but a partial list of facts which plaintiffs urged as "agreed facts," but which were in the pretrial order as "plaintiffs' contentions" because defendants refused to agree to them. In total, plaintiff listed 76 contentions, most of them stating facts which had been developed by sworn depositions and affidavits, as well as by other discovery. These facts were incontrovertible. Defendants had no evidence to the contrary. However, defendants denied

all these facts and proof of each issue was required at trial.

On at least two occasions it was necessary for plaintiffs' attorney to request that the court order defendants to allow him access to the jail and sufficient time to confer with his clients. Because plaintiffs' counsel lives and works a considerable distance from the jail site, frequent visits were impractical and it was necessary to make the infrequent visits productive. There was no reason established for limiting counsel's access to or time spent with his clients. Time was therefore needlessly consumed in petitioning the court for assistance.

In summary, defendants' counsel often required plaintiffs to expend time on this case where cooperation would have saved time.

Defendants' counsel decided to put plaintiffs to their proof on all issues, even those where the plaintiffs' evidence was overwhelming. That is defendants' right, as much as it is their right to a trial itself. However, the exercise of those rights by defendants required the expenditure of hundreds of hours by the plaintiffs. In this case defendants were aware that those hours would be compensated by them, should plaintiffs prevail. Plaintiffs have prevailed, and the law requires that those hours be compensated.

I find that there was no unnecessary expenditure of time by plaintiffs, and that this factor favors plaintiffs.

*Conclusion*

■ I find that the hourly rate of $125.00 should be multiplied by the reasonable hours, 977.35 to date, in order to establish the "lodestar" figure. I also find that this "lodestar" must be significantly increased by a multiplier, in light of the factors discussed above. As noted, plaintiffs' base rate allowed is $125.00 per hour. It is reasonable to compensate him with an additional $75.00 per hour. This renders his total hourly compensation at $200.00 per hour, or applies a multiplier of 1.6, and

---

**2.** Defendants were, of course, unable to find authority for engaging the services of a jury in a case wherein plaintiffs sought injunctive relief.

provides a total fee in the amount of $195,-470.00.

I therefore award attorney's fees to plaintiffs in the amount of $195,470.00.[3]

*Order for Immediate Payment*

In order to minimize the effect of appellate delay upon this award, I will order the defendants to pay a portion of the award at once. *Defendants'* expert witnesses' *lowest* estimate of the appropriate fee in this case was $55,597.50. Hence there is no good-faith dispute concerning this amount of the award. Nor can there be any question that plaintiffs have substantially prevailed. The relief plaintiffs obtained by virtue of defendants' early remedial steps, which were obviously taken in response to this suit, also provides an additional basis for an award of attorney's fees. *Jordan v. Multnomah County,* 694 F.2d 1156, 1158 (9th Cir.1982). I do not believe that an appeal of the $55,597.50 portion of the award, an amount which defendants concede is reasonable, can be maintained in good-faith. I therefore order that this portion of the fee be paid within thirty (30) days of this Opinion.

---

**3.** Plaintiffs' counsel sought a multiplier of 3 which would have resulted in a fee of $333,- 581.25.