Lawrence R. ALBERTI, et al., Plaintiffs,

v.

**SHERIFF OF HARRIS COUNTY, et al., Defendants.**

Crim. No. 72–H–1094.

United States District Court, S.D. Texas, Houston Division.

Aug. 26, 1987.

As Amended Oct. 8, 1987.

James Oitzinger, Gerald M. Birnberg, Williams, Birnberg & Andersen, Houston, Tex., for plaintiffs.

William White, Susman, Godfrey & McGowan, Houston, Tex., for Oitzinger & Birnberg.

Lupe Salinas, Asst. Co. Atty., Houston, Tex., for defendant, Sheriff Johnny Klevenhagen.

Roderick Lawrence, Asst. Co. Atty., Houston, Tex., for defendants, County Com'rs.

TABLE OF CONTENTS

| | Page |
|---|---|
| I. Introduction | 1180 |
| II. Defendants' Pendency Contention | 1181 |
| III. The Requirements of *Johnson* | 1182 |
| IV. Method Employed By The Court | 1183 |
| V. Determination of Fee | 1184 |
| A. *Johnson* Factor Number One: Time and Labor Required | 1184 |
| (1) Contemporaneous Time Records | 1184 |
| (2) Time Itemizations | 1186 |
| (3) Reasonableness of Time Expended | 1186 |
| (a) Time Spent Monitoring Compliance | 1186 |
| (b) Time Spent On Investigation | 1187 |
| (c) Results Obtained | 1187 |
| B. *Johnson* Factor Number Two: The Novelty and Difficulty of the Questions | 1188 |
| C. *Johnson* Factor Number Three: The Skill Requisite to Perform the Legal Service Properly | 1188 |
| D. *Johnson* Factors Numbers Four and Seven: The Preclusion of Other Employment by the Attorney Due To Acceptance of the Case and Time Limitations Imposed by the Client or the Circumstances | 1189 |
| E. *Johnson* Factor Number Five: The Customary Fee | 1190 |
| (1) Burden of Proof | 1191 |
| (2) Irrelevance to Fee Determination of Social Motivation of Plaintiffs' Attorneys | 1191 |
| F. *Johnson* Factor Number Six: Whether the Fee is Fixed or Contingent | 1191 |
| (1) Risk of Non-Payment | 1193 |
| (2) Risk of Delay in Receipt of Payment | 1193 |

|  |  |  | Page |
|---|---|---|---|
| G. | *Johnson* Factor Number Eight: | | |
| | The Amount Involved and the Results Obtained | | 1195 |
| H. | *Johnson* Factor Number Nine: | | |
| | The Experience, Reputation and Ability of the Attorneys | | 1197 |
| I. | *Johnson* Factor Number Ten: | | |
| | The Undesirability of the Case | | 1198 |
| J. | *Johnson* Factor Number Eleven: | | |
| | The Nature and Length of the Professional Relationship with the Client | | 1199 |
| K. | *Johnson* Factor Number Twelve: | | |
| | Awards in Similar Cases | | 1199 |
| V. | (a) Fees For Litigating Fee Issue | | 1200 |
| A. | Generally | | 1200 |
| B. | Opposition By § 1988 Defendants | | 1200 |
| C. | Time Spent Preparing Fee Petition | | 1200 |
| D. | Association of Special Fee Counsel | | 1201 |
| VI. | Ombudsman Issue | | 1201 |
| VII. | Costs and Expenses | | 1202 |
| A. | Computer Assisted Legal Research | | 1202 |
| B. | Depositions | | 1202 |
| C. | Certified Copies, Travel Expenses, Copies of Depositions, Photocopies, Delivery Charges, Certified Mail, Long Distance Telephone Charges, And Similar Expenses | | 1202 |
| D. | Expert Witness Fees | | 1203 |
| VIII. | Conclusion | | 1203 |
| IX. | Appendices | | 1205 |
| | Appendix A Claim By Attorney Oitzinger | | |
| | Appendix B Court Award to Attorney Oitzinger | | |
| | Appendix C Claim by Attorney Birnberg | | |
| | Appendix D Court Award to Attorney Birnberg | | |

## ORDER

CARL O. BUE, Jr., District Judge.

Pending before the Court is Plaintiffs' Application for Attorneys' Fees pursuant to 42 U.S.C.A. § 1988.[1]

## I. INTRODUCTION

This Cause of Action comprises to date fifteen years of protracted litigation before this Court. Plaintiffs filed suit in this Court on August 14, 1972, against members of the Harris County Commissioners Court ("Commissioners Court") and the Harris County Sheriff's Department, alleging numerous violations of their constitutional and statutory rights as the result of Defendants' operations and maintenance of county detention facilities.

On January 26, 1973, the Court granted the Plaintiffs' Motion to Designate a Class. On February 4, 1975, counsel signed and this Court approved a Consent Judgment by which Defendants generally agreed to bring presently existing facilities and operations into compliance with federal and state standards. *See* U.S. Const.Amends. I; V; VI; VIII; XIV. This Court expressly retained jurisdiction to issue any and all interim orders necessary to effectuate compliance with the Consent Judgment. Thereafter, compliance with the Consent Decree was questioned by the Plaintiffs, and compliance hearings were conducted by the Court resulting in this Court's issuance of additional remedial orders. Counsel for the Plaintiff class, Attorney James Oitzinger, has represented the Plaintiff class since the inception of the litigation. Mr. Oitzinger also served as the head of the Office of the Ombudsman pursuant to this Court's Order of December 16, 1975, until the Court terminated the position and appointed Special Masters on April 28, 1987. Counsel for the Plaintiffs, Attorney Gerald M. Birnberg, became involved in the instant action in mid-August 1975. Mr. Birnberg has served as trial counsel in the

---

1. Section 1988 provides that the prevailing party in federal civil rights actions may recover a "reasonable attorneys' fee as part of the costs."

action at bar from mid-August 1975 until the present. Mr. Birnberg also served as a member of the Office of the Ombudsman pursuant to this Court's directives from December, 1975 until the appointment by this Court of the Special Masters.

The Court conducted evidentiary hearings on the attorneys' fees issue from November 11, 1986 to November 26, 1986 and on December 2, 1986 until December 3, 1986. The parties presented evidence by live testimony, exhibits, depositions and affidavits.

Pending before the Court are numerous petitions, both pre-hearing and post-hearing, submitted by counsel for services rendered and for expenses incurred in connection with the present litigation from its inception in 1972 until March 1, 1987. For procedural and logistical reasons which will be elaborated upon hereafter in this Opinion, the Court will not consider applications of Plaintiffs' counsel for interim attorneys' fees after that date. These issues will be addressed at an appropriate time to be designated by the successor judge in this case.

## II. DEFENDANTS' PENDENCY CONTENTION

On October 21, 1986, Defendants filed a Motion to Deny Plaintiffs' Attorneys' Retroactive 42 U.S.C. § 1988 Claim, therein asserting for the first time that attorneys' fees should be denied to Plaintiffs' counsel for all time expended prior to October 19, 1976 (the effective date of the Civil Rights Attorneys' Fee Awards Act of 1976, (the "Act")). The rationale urged in support of the Motion was that the February 4, 1975 Consent Decree and/or the December 16, 1975 Memorandum and Opinion effectively terminated the litigation as of those respective dates, thereby resulting in the case not being "pending" on the effective date of the Act.

Previously, all opposition of the Defendants had focused solely "on the basis that there is evidence to controvert the number of hours claimed by Plaintiff as being reasonably required and reasonably expended to prevail on the merits of the case," and that "the hourly rate claimed by Plaintiff is excessive...." Such position had been adhered to even after the Court Order of May 27, 1986 which directed Defendants to "give the Plaintiffs the specific contentions of the defense" by June 27, 1986. More precisely, the 37–page Contentions of Defendants in Opposition to Attorneys' Fees Petition filed July 2, 1986 contained no hint of a "pendency" argument. As indicated above, this contention first surfaced on October 21, 1986, almost four months after the Court imposed deadline of June 27, 1986 and virtually on the eve of the November hearings.

■ While the argument can be persuasively made that Defendants should be precluded from raising the "pendency" argument at all in this untimely fashion, *Stewart v. Lubbock County, Texas,* 767 F.2d 153, 157 (5th Cir.1985), due to their unexplained failure for more than a year to reveal this new and novel defense despite repeated court orders, this Court opts to address the issue in view of the magnitude and complexity of the lawsuit as well as the uniqueness of the circumstances involved.

Defendants concede that Congress specifically intended that the Civil Rights Attorneys' Fee Awards Act of 1976 should be applicable retroactively to all cases which were "pending" on the effective date of the Act. *Hutto v. Finney,* 437 U.S. 678, 694 n. 23, 98 S.Ct. 2565, 2575 n. 23, 57 L.Ed.2d 522 (1978); *Jones v. Diamond,* 636 F.2d 1364, 1381 (5th Cir.1981) (*en banc*); *New York State Association for Retarded Children, Inc. v. Carey,* 544 F.Supp. 330, 335 (E.D.N.Y.1982), *aff'd,* 711 F.2d 1136, 1144–45 (2d Cir.1983); *Miller v. Carson,* 563 F.2d 741, 754 (5th Cir.1977); *Ruiz v. Estelle,* 553 F.Supp. 567, 575 (S.D.Tex.1982).

■ Defendants' position is that the case *sub judice* was not "pending" on October 19, 1976, because it had been previously terminated and was substantially inactive on that date, having achieved that status by virtue of the February 4, 1975 Consent Judgment. The Defendants argue that the Consent Judgment "was a final judgment in that all the substantive claims contained

in the Plaintiffs' Original Petition and Supplemental Petition had been disposed of by the Court's Order." Defendants Motion at p. 6. The first flaw in the Defendants' argument on this issue is their contention that the Consent Judgment was a final judgment. "Finality" implies that, after the entry of judgment, the Court will concern itself with nothing other than the mechanics of execution. *International Controls Corp. v. Vesco*, 535 F.2d 742, 747–48 (2d Cir.1976). The essence of a "final judgment" is that it leaves the Court nothing to do but order execution. *Amoco Overseas Oil Co. v. Campagnie Nationale Algerienne de Navigation*, 459 F.Supp. 1242, 1245 n. 1 (S.D.N.Y.1978), *aff'd*, 605 F.2d 648 (2d Cir.1979). Viewed from that perspective of basic black letter law, it is apparent that the February 4, 1975, Consent Judgment was not a final judgment. The Consent Judgment did not terminate the litigation.

It is undisputed by Defendants that the Plaintiffs in the case at bar were the "prevailing party" in this action to enforce the provisions of 42 U.S.C. § 1983. It therefore follows that the Plaintiffs are entitled to reasonable attorneys' fees as part of the costs of the lawsuit. 42 U.S.C. § 1988. Normally, this would be accomplished at the conclusion of the litigation.

■ However, in an action such as the case at bar which remains an ongoing lawsuit, the Court may award fees and costs incident to the disposition of interim matters on a *pendente lite* basis. *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Carpenter v. Stephen F. Austin State University*, 706 F.2d 608, 633 (5th Cir.1983); *Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 723, 94 S.Ct. 2006, 2022, 40 L.Ed.2d 476 (1974); H.R.Rep. No. 94–1558, 7–8; S.Rep. No. 94–1011, 94th Cong. 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5912; *Ruiz v. Estelle*, 609 F.2d 118 (5th Cir.1980).

Moreover, the Court expressly concludes that Defendants' assertion that the case was not "pending" on October 19, 1976 (the effective date of the Civil Rights Attorneys' Fee Award Act of 1976) is in error under existing law. The Court finds that there were substantial claims still unresolved on October 19, 1976. The February 4, 1975 Consent Decree had specifically contemplated a continuing and ongoing process which would include further adjudication by the district court and which did not terminate the litigation. Specifically, the Consent Judgment provided that the Commissioners Court would submit to the Court for approval a plan to bring jail facilities into compliance with state and constitutional standards. The Consent Judgment provided that the Court would make a determination concerning whether the plan proposed by the Commissioners would effectuate compliance with state and constitutional standards within a minimum amount of time. Thereafter, if persuaded by the evidence at a subsequent hearing that such a result could be expected to follow from implementation of the plan, the Court would order compliance. Throughout the time between February 4, 1975 and October 19, 1976, the parties were engaged in continuous negotiations, monitoring and litigation.

### III. THE REQUIREMENTS OF *JOHNSON*

The Court has strictly applied the factors enunciated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The *Johnson* Court listed twelve factors to be utilized by a trial court in the determination of a reasonable attorneys' fee award:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal services properly;

(4) The preclusion of other employment by the attorney due to acceptance of the case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation and ability of counsel;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

The *Johnson* case was cited with approval by both the House and the Senate when the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988 was enacted into law. H.R.Rep. No. 94–1558, 94th Cong., 2d. Sess. 8 (1976); S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6 (1976), U.S.Code Cong. & Admin.News 1976, p. 5908. The United States Supreme Court has recognized Congress' acceptance of the *Johnson* guidelines. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 897 n. 13, 104 S.Ct. 1541, 1548 n. 13, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 428–33, 103 S.Ct. 1933, 1936–39, 76 L.Ed.2d 40 (1983); *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 3097–98, 92 L.Ed.2d 439 (1986).

This Court has strictly applied the *Johnson* criteria for the determination of attorneys' fee awards. *See, e.g., Alberti v. Sheriff of Harris County*, No. H–72–1094 (S.D.Tex. March 2, 1984) [available on WESTLAW, 1984 WL 6617] (order awarding interim attorneys' fees); *Day v. Amoco Chemical Corp.*, 595 F.Supp. 1120 (S.D. Tex.1984); *Sebastian v. Texas Dept. of Corrections*, 558 F.Supp. 507 (S.D.Tex. 1983); *Cruz v. Beto*, 453 F.Supp. 905 (S.D. Tex.1977).

More recently, in *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092 (5th Cir.1982) and in *Sims v. Jefferson Downs Racing Association, Inc.*, 778 F.2d 1068, 1083–85 (5th Cir.1985), the Fifth Circuit outlined the framework in which the twelve enumerated *Johnson* factors should be considered by a trial court in its determination of a reasonable attorneys' fee award:

(1) Ascertain the nature and extent of the services supplied by the attorney;

(2) Value the service according to the customary fee and quality of the legal work; and

(3) Adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the petitioner's case.

The product of steps (1) and (2) is the "lodestar." The District Court then must consider the applicable remaining factors to determine if the lodestar should be adjusted. *Nisby v. Commissioners Court of Jefferson County* 798 F.2d 134, 137 (5th Cir. 1986); *Sims v. Jefferson Downs Racing Association, Inc.*, 778 F.2d at 1084.

Consequently, to determine the appropriateness of attorneys' fees to be awarded in the action at bar, the Court proceeds to the application of the twelve factors of *Johnson* as well as the three enumerated guidelines outlined by the Fifth Circuit in *Copper–Liquor, Sims* and *Nisby*. The Court must pay "special heed to *Johnson* criteria numbers (1) the time and labor involved, (5) the customary fee, (8) the amount involved and the results obtained, and (9) the experience, reputation and ability of counsel." *Copper–Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 583 (5th Cir.1980). Moreover, the Court must be especially sensitive to the issue of duplication of effort and to the distinction between "legal work, in the strict sense," and clerical work "that a lawyer may do because he has no other help available." *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 536 (5th Cir.1986) *citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717. In order for the Court to determine the reasonableness of attorneys' fees, the necessary starting point is to assess the amount of time expended by counsel in the case at bar. *Johnson v. Georgia Highway Express, Inc., supra* at 717.

## IV. METHOD EMPLOYED BY THE COURT

The Plaintiffs' counsel have submitted fee applications containing sworn affidavits particularizing with specificity:

(1) Each item for which payment of attorneys' fees is sought;

**1184**

(2) A general description of the services performed;

(3) The amount of time claimed;

(4) The billing rate claimed; and

(5) The approximate dates when the services were rendered.

While Mr. Oitzinger and Mr. Birnberg submitted somewhat similar detailed charts, the time increments (inclusive dates designated as "phases" on the charts) are not precisely alike. This factor plus stringent objections of Defendants to recently filed affidavits covering ongoing fees and expenses to date of Plaintiffs' counsel have caused this Court to terminate consideration of fees to Mr. Oitzinger as of December 31, 1986 and Mr. Birnberg as of March 1, 1987.

## V. DETERMINATION OF FEE

A. *Johnson* Factor Number One:

Time and Labor Required

Defendants who seek to contest the reasonableness of a claim by Plaintiffs' counsel have the burden to submit to the Court evidence calling into question the accuracy and reasonableness of the hours charged or the facts asserted in the affidavit submitted by Plaintiff. *Blum v. Stenson,* 104 S.Ct. at 1545 n. 5; *Spell v. McDaniel,* 616 F.Supp. 1069, 1086 (E.D.N.C.1985). In the action at bar, Plaintiffs' counsel have met the burden of submitting detailed affidavits regarding time and labor required in the prosecution of the instant case. The burden of proceeding then shifts to the Defendants who must submit facts and detailed affidavits controverting the allegations made by the fee applicants. *National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1337–38 (D.C.Cir.1982) (Tamm, J., concurring). The Defendants cannot carry their argument simply by making the assertion that Plaintiffs' counsel have failed to meet their burden of proof. *Ruiz v. Estelle,* 553 F.Supp. 567, 586 (S.D.Tex.1982). When a losing party chooses to contest the prevailing party's requested attorney's fees, it must do so by specific countervailing evi-

dence. *Spell v. McDaniel,* 616 F.Supp. 1069, 1101–02 (E.D.N.C.1985).

(1) Contemporaneous Time Records

The Defendants contend that non-trial time should be reduced by at least 50 percent due to the lack of documentation during the time period for which Plaintiffs' counsel did not submit contemporaneous time slips. The Plaintiffs assert that there is adequate evidentiary support for all time claimed.

Case law relating to services rendered prior to 1983 unanimously rejects the proposition that counsel should be substantially penalized for failure to maintain contemporaneous time records for work performed prior to that time. *See, e.g., Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205, 1207 (11th Cir.1983) ("the lack of contemporaneous records does not justify an automatic reduction in the hours claimed"); *Ramos v. Lamm* 713 F.2d 546, 553 n. 2 (10th Cir.1983) ("we do not forbid, retrospectively, the use of reconstructed time records and do not demand that the reconstructed hours be arbitrarily reduced"); *New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir. 1983) (refusing to adopt "(s)tate's proposal that Plaintiffs be denied all attorneys' fees" for failure to keep contemporaneous time records, although announcing a prospective rule for time incurred after June 15, 1983 only); *Cruz v. Beto,* 453 F.Supp. 905, 907 (S.D.Tex.1977), *aff'd,* 603 F.2d 1178 (5th Cir.1979); *Harkless v. Sweeny Independent School District,* 466 F.Supp. 457, 473–74 (S.D.Tex.1979), *aff'd,* 608 F.2d 594, 597 (5th Cir.1979); *Williams v. Heard,* 568 F.Supp. 89 (S.D.Tex.1983).

In *Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1094 (5th Cir.1982), the Fifth Circuit expressly refused to adopt a rule requiring contemporaneous time records in attorneys' fees cases. The panel decision in that regard was expressly affirmed by the *en banc* Fifth Circuit Court in *Copper Liquor, Inc. v. Adolph Coors Co.,* 701 F.2d 542, 545 (5th Cir.1983) (*en banc*). Moreover, with the adoption of Local Rule 47.8.1, the Fifth Circuit specifical-

ly provided that "in the absence of contemporaneous time records recording all work for which a fee is claimed and reflecting the hours and fractional hours of work done and the specific professional level of services performed by each lawyer for whom compensation is sought, no time expended will be considered in the setting of the fee beyond the minimum amount necessary in the Court's judgment for any lawyer to produce the work seen in court." However, the rule does not require documentation where an exception is necessary "to avoid an unconscionable result." The Fifth Circuit rule by its own terms, "shall not govern claims or portions of claims for attorneys' fees for work performed before January 1, 1983." Thus, the Fifth Circuit has, by Local Rule and by *en banc* opinion, rejected the claim advanced by Defendants that contemporaneous time records are mandatorily required or necessary to document time expended for work performed prior to January 1, 1983.

The fee applicant need not detail the exact number of minutes labored nor the precise activity to which those hours are devoted. *Riddell v. National Democratic Party,* 545 F.Supp. 252, 257 (S.D.Miss. 1982); *Lawler v. Teofan,* 807 F.2d 1207 (5th Cir.1987); *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (*en banc*); *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir. 1973) (*en banc*); *Environmental Defense Fund, Inc. v. Environmental Protection Agency,* 672 F.2d 42, 54 (D.C.Cir.1982). The fee petitioner need only provide the district court with a description of the services rendered in sufficient detail that, when considered with the record of the case, the Court can make a determination as to the extent, nature and quality of the applicants' services, based on the Court's independent evaluation of whether the hours claimed are justified. *Lawler v. Teofan,* 807 F.2d 1207 (5th Cir.1987).

In terms of adequacy of proof of the time expended by counsel, all the case law requires is that "the party seeking an award of fees should submit evidence supporting the hours worked." *Hensley v.*

*Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Contemporaneously recorded time sheets are, of course, the preferred practice. However, they are neither indispensable, nor the only type of evidence which can support an applicant's claim that he or she expended a particular amount of time in a particular manner in a given lawsuit. *Webb v. County Board of Education of Dyer County, Tennessee,* 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985).

A prevailing party will have fulfilled its burden of proving the time expended component of a fee claim by presenting evidence sufficient to enable the Court to reasonably ascertain that the hours claimed by counsel in their affidavits are a rational reflection of the services performed. *Cruz v. Beto,* 453 F.Supp. 905, 908 (S.D.Tex. 1977), *aff'd,* 603 F.2d 1178 (5th Cir.1979). *Harkless v. Sweeny Independent School District,* 466 F.Supp. 457, 473–74 (S.D.Tex. 1979), *aff'd,* 608 F.2d 594, 598 (5th Cir. 1979); *Williams v. Heard,* 568 F.Supp. 89 (S.D.Tex.1983).

In the present case, the Court finds that there is an abundance of other evidence which has been submitted and which is legally sufficient to satisfy the evidentiary burden placed upon a fee petition applicant to prove the total number of hours expended on the litigation. The Court concludes that each of the following items constitutes legally relevant and probative evidence supporting the hours expended by Plaintiffs' counsel in the action at bar:

a. Most significantly, the Court's observations of counsels' work performed in the course of this lawsuit, coupled with the Court's familiarity with the case. *Cruz v. Beto,* 453 F.Supp. 905, 908 (S.D.Tex.1977), *aff'd,* 603 F.2d 1178, 1186 (5th Cir.1979); *Williams v. Heard,* 568 F.Supp. 89 (S.D. Tex.1983); *Sebastian v. Texas Dept. of Corrections,* 558 F.Supp. 507, 511–12 (S.D. Tex.1983); *Day v. Amoco Chemicals Corp.,* 595 F.Supp. 1120, 1124 (S.D.Tex. 1984); *Harkless v. Sweeny Independent School District,* 466 F.Supp. 457, 473 (S.D. Tex.1979), *aff'd,* 608 F.2d 594, 597 (5th Cir.

1979); *Ruiz v. Estelle,* 553 F.Supp. 567, 584 (S.D.Tex.1982).

b. The testimony of Plaintiffs' counsel and the Court's assessment of their honesty and candor. *Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205, 1207 (11th Cir. 1983); *Harkless v. Sweeny Independent School District,* 466 F.Supp. 457, 473 (S.D. Tex.1979), *aff'd,* 608 F.2d 594, 597 (5th Cir. 1979).

c. The pleadings, court orders, memoranda of law and other reports and court records in the file of the case. *Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205, 1207 (11th Cir.1983); *Harkless v. Sweeny Independent School District,* 466 F.Supp. 457, 473 (S.D.Tex.1979), *aff'd,* 608 F.2d 594, 597 (5th Cir.1979).

d. Expert opinions of other attorneys opining as to the time which would have been reasonably required to be expended by competent counsel in similar cases. *Leroy v. City of Houston,* 648 F.Supp. 537 (S.D.Tex.1986).

e. The amount of time expended by Defendants' attorneys. *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 765 (7th Cir. 1982); *Ruiz v. Estelle,* 553 F.Supp. 567, 584–85 (S.D.Tex.1982).

### (2) Time Itemizations

The Court has carefully examined the time-sheet affidavits submitted by counsel. Moreover, the Court has carefully reviewed the time itemizations set forth in Plaintiffs' Exhibits Nos. 1, 2, 18, 20, 22, 25, 26, 58 and 59. In addition, the Court has weighed the hours claimed by counsel in light of the Court's own experience and observations, thereby fashioning a total time allowance which rationally reflects the services rendered. *McDonald v. Oliver,* 525 F.2d 1217, 1233 (5th Cir.), *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976); *Sebastian v. Texas Dept. of Corrections,* 558 F.Supp. 507 (S.D.Tex.1983).

A district court cannot be expected to anticipate every conceivable argument that might be raised under each of the twelve *Johnson* factors and to make findings that will respond to them. It is sufficient that the overall fee calculation meets the Supreme Court's guidelines in *Blum* and *Hensley. Brantley v. Surles,* 804 F.2d 321 (5th Cir.1986).

The Court finds that the above-described time itemizations constitute reliable and essentially accurate calculations of the time expended by Mr. Oitzinger and by Mr. Birnberg in the instant case, both in merits work and in the attorneys' fees litigation. The Court further finds that the testimony of Mr. Oitzinger and of Mr. Birnberg during the hearing on attorneys' fees was accurate, credible and trustworthy.

The Court concludes that on the basis of the other evidence in the record the Plaintiffs have retained and discharged the burden of proving by sufficiently credible and compelling evidence the amount of time expended by them in this litigation. The Court further concludes that the petitioners have discharged their burden of submitting legally sufficient evidence to support, and of demonstrating, the nature and extent of the services rendered and performed by each of them.

### (3) Reasonableness of Time Expended

#### (a) Time Spent Monitoring Compliance

Section 1988 authorizes attorneys' fee compensation only for time reasonably expended on a case. *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). Therefore, a district court is required to carefully evaluate a fee petitioner's request for fees in terms of the reasonableness of time expended on the case.

The sheer magnitude of the hours expended does not, in and of itself, indicate that the hours were not reasonably expended. *See, e.g., In re Corrugated Container Antitrust Litigation* 1983–2 Trade Cases (CCH) § 65–628 (1983) (165,895.91 hours reasonably expended on antitrust case); *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 371 (D.D.C.1983) (11,262.96 hours of merits reasonably expended in Title VII case; *additional* 3,400 hours reasonably expended in attorneys' fee litigation); *Lawler v. Teofan,* 807 F.2d 1207 (5th

Cir.1987) (5,693.65 hours reasonably expended in bankruptcy case); *Ruiz v. Estelle*, 553 F.Supp. 567 (S.D.Tex.1982) (7,788.7 hours reasonably expended in initial phase of prison case).

Counsel are clearly entitled to compensation for all time expended in monitoring implementation of or compliance with injunctive decrees. *See generally Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624, 637 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980); *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 121 (3d Cir.1976) (*en banc*). This is so because § 1988 requires the award of attorneys' fees to a prevailing party for counsel's post-judgment efforts related to enforcement of an injunction to secure compliance with the Court's order. *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir.1985).

■ Accordingly, the Court finds that in the action at bar the Plaintiffs' counsel are entitled to adequate compensation for fees incurred relating to implementation of and compliance with the Court's orders in view of the fact that Plaintiffs' counsel were expressly directed by the Court to undertake such monitoring activities.

#### (b) Time Spent on Investigation

■ The Defendants contend that certain time claimed in the fee applications is non-compensable because it constitutes "general information gathering" or "self education", rather than court-directed monitoring of compliance with the Court's orders. Settled case law holds that counsel are entitled to recover attorneys' fees under § 1988 for time expended in general background research so long as the research is (1) relevant, and (2) reasonable in terms of time for the scope and complexity of the litigation. *Spell v. McDaniel*, 616 F.Supp. 1069, 1098 (E.D.N.C.1985) (allowing compensation for reading materials on the history of public training in North Carolina and a handbook on police misconduct); *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983).

#### (c) Results Obtained

Case law holds that the most significant determinant of whether hours were reasonably expended is the overall relief obtained as a result of that expenditure of time. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 2691–92, 91 L.Ed.2d 466 (1986). So long as the time expended by counsel in prosecuting the litigation reflected sound legal judgment under the circumstances and produced sufficiently satisfactory results, the time is deemed to have been reasonably expended to justify an award of attorneys' fees.

The Court finds that the work product which the Court has observed over the years clearly supports the expenditure by Messrs. Oitzinger and Birnberg of the time claimed in the itemizations. The Court further finds that the hours claimed by the fee applicants are a reasonable reflection of the time and labor required by the case. The Court has carefully reviewed all of the affidavits and time itemizations submitted by Messrs. Birnberg and Oitzinger and the other attorneys in the case at bar. Moreover the Defendants have not attested that the hours claimed are duplicative. The Court finds that the hours claimed by the fee applicants are all non-duplicative time. Accordingly, the Court finds that none of the time expended by Plaintiffs' counsel was excessive in view of the requirements of this protracted case and that all such time and labor were reasonably required by the case.

To the extent a determination of the reasonableness of the time expended by Plaintiffs' counsel constitutes, a conclusion of law rather than a finding of fact, the Court concludes that the time claimed by Plaintiffs' counsel as reflected on their fee petitions and itemizations in support thereof and Plaintiffs' Exhibits Nos. 1, 2, 18, 20, 22, 25, 26, 29, 31, 33, 35, 58, 59, 60, 72, 81, 91, 92, 93 and 94 constitutes time reasonably expended in pursuit of the ultimate

result achieved in this lawsuit and that all hours claimed on those exhibits were reasonably expended on the litigation.

### B. *Johnson* Factor Number Two:

### The Novelty and Difficulty of the Questions

The Defendants contend that the *Alberti* case is "not complex." *See* Defendants' Proposed Findings of Fact Nos. 70, 216, 269 and 270.

The Court characterized this case as complex, and the Defendants did not challenge nor did they appeal the Court's determination. *Alberti v. Sheriff of Harris County, Texas,* 406 F.Supp. 649, 655 (S.D.Tex.1975). Moreover, the Court's Order of March 2, 1984 noted "the multitude of novel and difficult issues" raised by the lawsuit, specifically in connection with assessing reasonable attorneys' fees. That finding constitutes the law of the case.

Congress specifically equated federal civil rights litigation to antitrust work as being *ipso facto* equivalently "complex" for purposes of setting fees. S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6 *reprinted in* 1976 U.S.Code Cong. & Ad.News § 5908, 5913; *Martino v. Carey,* 568 F.Supp. 848, 850 (D.Or.1983).

The Supreme Court, the Fifth Circuit Court of Appeals and other federal courts have all recognized and adverted to the notion that, for purposes of determining fees under § 1988, civil rights cases are presumptively deemed to be as "complex" as antitrust cases. *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 2695, 91 L.Ed.2d 466 (1986); *Blum v. Stenson,* 465 U.S. 886, 893, 104 S.Ct. 1541, 1546, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 430 n. 4, 103 S.Ct. 1933, 1938 n. 4, 76 L.Ed.2d 40 (1983); *Jones v. Diamond,* 636 F.2d 1364, 1381 (5th Cir.1981) (*en banc*); *Knighton v. Watkins,* 616 F.2d 795, 800 (5th Cir.1980) (*en banc*); *Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205, 1211 (11th Cir.1983).

Case law holds that civil rights litigation involving numerous challenges to institutional practices or conditions is inherently complex. *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Bringing a state's penal system into compliance with constitutional requirements to the satisfaction of all parties involved, while at the same time working within the political framework and legislative constraints of that state is immensely complex. *Newman v. Graddick,* 740 F.2d 1513, 1516 (11th Cir.1984). *Ruiz v. Estelle,* 553 F.Supp. 567, 578, 591 (S.D.Tex.1982); *Tasby v. Wright,* 550 F.Supp. 262, 269 (N.D.Tex.1982).

The Defendants argue that the case at bar is not "complex" as defined by the Manual on Complex Litigation. *See* Defendants' Answers to Interrogatory No. 10(b). The action at bar is a class action in which the underlying class has consisted of more than three-quarters of a million (750,-000) individuals during the pendency of the lawsuit. The *Manual for Complex Litigation 2d* mentions class actions as a type of complex litigation.

■ Accordingly, the Court holds that the Defendants' contentions regarding the complexity of the case must fail pursuant to the applicable law and the particular facts of the present case.

### C. *Johnson* Factor Number Three:

### The Skill Requisite to Perform the Legal Service Properly

The Defendants assert that "Mr. Oitzinger had little experience in the general practice of law before becoming involved with the case in 1972." Defendants' Post–Trial Brief at p. 6; *See* Defendants' Proposed Findings of Fact Nos. 50, 56, 57, 58, 91, and 92.

The most effective method that the Court can utilize in assessing the skill of counsel is its own observation of counsel's work product and conduct before this Court. Mr. Oitzinger's fifteen year and Mr. Birnberg's thirteen year involvement in the case at bar have provided the Court with ample opportunity to make such observations. After careful and judicious consideration of this factor, the Court is of the opinion that Messrs. Oitzinger and

Birnberg have ably and skillfully performed the legal services for the Plaintiff class in this protracted litigation.

### D. *Johnson* Factors Numbers Four and Seven:

The Preclusion of other Employment by the Attorney Due to Acceptance of the Case and Time Limitations Imposed by the Client or the Circumstances

The preclusive effect of representation involves two interrelated, but distinct, economic aspects of representation in a given case: (a) The preclusion of other employment of the attorney due to acceptance of the case (*Johnson* factor no. 4) and (b) time limitations imposed by the client or the circumstances of the case (*Johnson* factor no. 7). *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir.1974).

Both fee petitioners identified several specific instances[2] where their representation of other clients in substantial legal matters which would otherwise have been available to them was foreclosed because of conflicts of interest that would have occurred from their representation of the Plaintiff class in the action at bar. (Testimony of Messrs. Oitzinger and Birnberg). Moreover, both fee petitioners testified that the time requirements of the present case precluded their obtaining other clients because they were required to expend the time on the instant litigation and therefore were not free to use the time for other purposes. The Defendants failed to present any evidence that rebutted, challenged or contested that testimony.

The Court must also consider the time limitations imposed by the circumstances of the case. (*Johnson* factor no. 7). *Johnson* holds that when new counsel is called in to handle matters at a late stage in the proceedings, the attorney is entitled to some premium in the calculation of the attorney's fee. 488 F.2d at 718. The Defendants in the action *sub judice* do not contest that Mr. Birnberg was asked at the proverbial last minute to serve as trial counsel in connection with the 1975 hearings. Mr.

Birnberg testified that representation of the Plaintiff class in the action at bar caused significant disruptions to his legal practice at the time.

Mr. Oitzinger testified that during the first 90 days of his representation of the Plaintiff class in the action at bar, his representation of the class consumed virtually all of his time. (Testimony of Mr. Oitzinger). Further, the petitioners testified that the series of hearings conducted during the summer of 1982, with monitoring and reporting required during hiatuses between monthly hearings, presented unusual, demanding and obviously disruptive scheduling problems.

In the action at bar, Plaintiffs' counsel have requested that the Court take into account the twin factors of preclusion of other employment (*Johnson* factor no. 4) and time limitations imposed due to the circumstances of the case (*Johnson* factor no. 7) by adjusting the customary fee determined by the Court. The fee petitioners have tailored their requests to specific time periods as to which they presented actual evidence of identifiable adverse economic impact from the preclusive effects of the lawyers' involvement in this litigation. (*See* Appendices A, B, C, and D.)

The Defendants contend that the preclusion of other employment factors specified in *Johnson* should be ignored in the action at bar because Mr. Oitzinger's wife financially supported him during the first six years of the litigation. Moreover, the Defendants assert that Mr. Birnberg could have been supported financially by other members of his law firm while he was working on the instant litigation, and that those circumstances would offset any adverse economic consequences relating to the representation of the Plaintiff class in the case *sub judice*.

Case law holds that protracted litigation has a preclusive effect on one's law practice which is not reflected in a classic lodestar calculation. *Bowe v. Colgate-Palmo-*

2. Plaintiffs' counsel testified within confidentiality constraints imposed by the attorney-client privilege.

*live Co.,* 443 F.Supp. 696, 719 (S.D.Ind. 1977). Certainly, *Johnson* requires a district court to consider the preclusive effect of representation in its determination of a reasonable attorney's fee. The fact that an attorney has other sources of income during the pendency of litigation is of no moment. Counsel's ability to absorb the cost of a civil rights lawsuit is irrelevant to the determination of a reasonable attorney's fee under § 1988. *Witherspoon v. Sielaff,* 507 F.Supp. 667, 669 (N.D.Ill.1981).

The Court finds that the fee petitioners presented credible evidence demonstrating that the time requirements of the present case had a preclusive effect on their law practice which resulted in an adverse economic impact during specific phases of this protracted litigation.

The Court further finds that this factor of preclusion of other employment by the attorneys due to acceptance of the case is not subsumed within customary hourly rates. The Court concludes that in order to compensate Plaintiffs' counsel for the adverse economic impact of the preclusion factor, it is necessary to adjust the customary fee. On the facts of this case, failure to adjust the customary hourly fee would result in an unreasonably low and not fully compensatory fee. Therefore, the Court will adjust the customary hourly fee to reflect the preclusion factor as required by the Fifth Circuit in *Johnson.* (*See* Appendices A, B, C and D.)

To the extent such findings constitute conclusions of law rather than findings of fact, the Court concludes that Plaintiffs' counsel have discharged the burden of demonstrating by credible evidence that it is necessary to adjust the customary fee otherwise applicable to Mr. Oitzinger's services of pre-September 15, 1978 time upward by a rate of an additional Five Dollars ($5.00) per hour. This adjusted customary fee is to compensate fairly for the preclusive effects of Mr. Oitzinger's representation of the plaintiff class in the present case on his remaining legal practice.

To the extent such findings constitute conclusions of law rather than findings of

fact, the Court concludes that Plaintiffs' counsel have discharged the burden of demonstrating by credible evidence that it is necessary to adjust the customary fee otherwise applicable to Mr. Birnberg's services for pre-August 7, 1982 time upward by a rate of an additional Five Dollars ($5.00) per hour. This adjusted customary fee is to compensate fairly for the preclusive effects of Mr. Birnberg's representation of the Plaintiff class in this case on his remaining legal practice. (*See* Appendices A, B, C, and D.)

### E. *Johnson* Factor Number Five:
#### The Customary Fee

The Court must determine the lodestar after assessing the customary fee for each attorney. The customary fee is calculated by weighing three factors:

(1) The attorney's reputation;

(2) The size of his or her firm; and

(3) The city where the firm is located.

The Court then sets a reasonable hourly rate after an investigation into the rates charged by attorneys of similar reputation, skill, firm size and geographic location.

Reasonable fees under § 1988 are to be calculated according to the "prevailing market rate" in the relevant community. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The "prevailing market rate" is the rate existing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

The determination of the "prevailing market rate" must be the same, irrespective of whether a plaintiff was represented by private counsel or by a nonprofit legal services organization. *Blum v. Stenson,* 465 U.S. 886, 894, 104 S.Ct. 1541, 1546, 79 L.Ed.2d 891 (1984). The legislative history of the Civil Rights Attorneys' Fees Awards Act of 1976 makes it clear that fees should not be reduced merely because the attorneys are salaried employees of public interest and/or foundation-funded law firms. *Environmental Defense Fund, Inc. v. Environmental Protection Agency,* 672 F.2d 42, 59 (D.C.Cir.1982). It is "community rates," not necessarily the attorney's own

billing practices, which control a determination of "prevailing rates," although evidence presented regarding the attorney's own billing practices may be probative of prevailing community rates. *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325 n. 7 (D.C.Cir.1982); *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D.Cal.1974); *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984).

### (1) Burden of Proof

A fee applicant bears the initial burden of providing specific evidence of the prevailing community rate for the type of work for which he seeks an award. *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325 (D.C.Cir.1982). That evidence should ordinarily consist of (a) the attorney's own affidavit attesting to the rates customarily paid by fee-paying clients in the community and (b) evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). Such affidavits may, for example, recite the fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases. *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325 (D.C.Cir.1982).

Once the fee applicant has provided support for the requested rate, the burden falls on the Defendants to go forward with evidence that the rate is erroneous. The Defendants must present specific countervailing evidence rebutting the requested rate. In the normal case the Defendants must either accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate. *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C.Cir. 1982); *Spell v. McDaniel*, 616 F.Supp. 1069, 1101–02 (E.D.N.C.1985). It is not legally sufficient for an opposing party simply to state that the rates submitted by the fee applicant are too high. *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1337–38 (D.C.Cir.1982) (Tamm, J. concurring).

### (2) Irrelevance of Social Motivation of Plaintiffs' Attorneys to Fee Determination

Defendants in the action at bar asserted that the "prevailing rate" for legal services rendered in the present case should be affected by the fact that Plaintiffs' counsel were "motivated by (their) sense of social responsibility when (they) agreed to accept the case." Defendants' Proposed Finding of Fact No. 229. Whether a lawyer undertakes civil rights litigation out of a sense of social responsibility and professional obligation to vindicate important constitutional rights or out of sheer avariciousness is legally irrelevant to the fee determination calculus. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

It is the dynamics of the marketplace, not the social conscience of the lawyer, which determines the reasonableness of a fee. *Cf. International Society for Krishna Consciousness, Inc. v. Collins*, 609 F.2d 151 (5th Cir.1980); *Bunn v. Central Realty of Louisiana*, 592 F.2d 891 (5th Cir.1979). Therefore, the Court finds that the Defendants' contention regarding the social motivation of Plaintiffs' counsel in the action at bar is irrelevant to the Court's determination of a reasonable attorneys' fee award.

### F. *Johnson* Factor Number Six:

### Whether the Fee is Fixed or Contingent

In *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir.1980), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980), the Fifth Circuit again recognized the importance of considering *Johnson* factor number six, whether the fee is fixed or contingent. The Fifth Circuit in *Piambino* noted that in fixing the amount of attorneys' fees, the Court must, of course, take all of the *Johnson* criteria into account, including the uncertainty of recovery. 610 F.2d at 1328.

In the present action, any hope for recovery of attorneys' fees by Plaintiffs' counsel was wholly contingent on the outcome of the case. Nonetheless the Defendants in the action at bar vigorously oppose Plaintiffs' counsels' request for a contingency enhancement. The Defendants contend that because it was unlikely that attorneys' fees would be awarded at the inception of the case, the Plaintiffs' counsel did not really expect to recover fees; therefore, it would be unfair to the Defendants to enhance the lodestar upward to account for this factor.

Courts have repeatedly emphasized the appropriateness of awarding a contingency enhancement where, as in the present case, the contingency was not merely whether the Plaintiffs would prevail on the merits, but additionally, whether attorneys' fees were recoverable at all at that time, even if the Plaintiffs were successful on the merits. *See, e.g., Harris v. City of Fort Myers,* 624 F.2d 1321, 1325–26 (5th Cir. 1980) (quoting from the order of the trial court:

> Moreover, this case was not simply contingent in the usual sense, *i.e.,* dependent on winning the merits. At the time plaintiffs' counsel undertook this assignment, the complaint being filed on February 26, 1976, there was no statute providing for attorneys' fees even if they prevail; the law at that time entitled them to fees only if the defendants litigated in bad faith. *See, e.g., F.D. Rich Co., Inc. v. Industrial Lumber Co., Inc.,* 417 U.S. 116, 129, 94 S.Ct. 2157 [2165], 40 L.Ed.2d 703 (1974) and *Gates v. Collier,* 489 F.2d 298 (5th Cir.1973). This case was thus doubly contingent, and the Court—had plaintiffs asked, which they did not—would have been more than justified in granting a 'multiplier' or 'incentive' award above the fixed hours claimed in light of the contingency nature of the case. (emphasis in original)).

*See also Laje v. R.E. Thomason General Hospital,* 502 F.Supp. 185, 188 (W.D.Tex. 1980).

In the present case, the fee award was contingent in two respects. Plaintiffs' probability of success on the merits was difficult to predict at the outset, as was the legal entitlement to a fee award in the event they successfully represented their clients' interests. This second factor is so because on August 14, 1972, when the complaint in the action at bar was filed, there was no statute providing for attorneys' fees even if the Plaintiffs prevailed.

In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* — U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), the United States Supreme Court addressed the issue of whether under Section 304(d) of the Clean Air Act, a prevailing party under a contingent fee arrangement should be awarded separate compensation for the risk of losing and not being paid. *Id.* — U.S. at ——, 107 S.Ct. at 3080. The White plurality opinion states the holding of the Court: "We deem it desirable and an appropriate application to hold that if the trial court specifically finds that there was a real risk of not prevailing issue [sic] in the case, an upward adjustment of the lodestar may be made, but, as a general rule, in an amount no more than one-third of the lodestar." *Id.* at ——, 107 S.Ct. at 3089.

■ A difficult aspect to unravel in *The Delaware Valley* case is the Supreme Court's alignment on the method of calculating contingency enhancement compensation and the factors which can—and those which cannot—be considered in such a computation. The White plurality sets forth three rules: (a) there must be a real risk of losing apparent at the outset of the litigation (or, at least, at the time counsel entered the case); (b) absent exacting justification, risk enhancement must be limited to one-third (⅓) of the lodestar; and (c) there should be evidence in the record, and the trial court should so find, that without risk enhancement Plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market. *Id.* The White plurality view focuses upon the existence (or non-existence) at the beginning of the litigation of a real risk that the Plaintiff would not be able to carry the day on the merits in that particular case, and, absent such circumstances, would disallow

contingency enhancement. In view of the *Delaware* decision, and the facts of this case, the Court is of the opinion that the Plaintiffs in the instant litigation do not fit within the above mentioned contingency enhancement rules identified by the White plurality. However, the Court will take into account the risk of non-payment faced by the *Alberti* counsel.

### (1) Risk of Non–Payment

In the present case, Plaintiffs' counsel requested different multipliers during different phases of the case. Essentially, Plaintiffs acknowledged that the riskiness of recovery of attorneys' fees lessened throughout the course of the litigation and adjusted their enhancement requests accordingly. (*See* Appendices A, B, C and D.)

After prudent examination of the exhaustive briefs submitted by the parties, the applicable law and the facts and circumstances of the case, the Court finds that there can be no genuine dispute about the fact that there was a real risk of non-payment at the beginning of representation by each of the lawyers in the *Alberti* litigation. The present case differs from *Delaware Valley* in a particularly significant aspect: the Supreme Court case involved a situation in which, if Plaintiffs prevailed on the merits, there was no question concerning their entitlement to attorneys' fees (because of Section 304(d) of the Clear Air Act). In the action *sub judice,* by contrast, the most crucial risk faced by Plaintiffs' attorneys was that between 1972 and October 1976, there was no fee-splitting statute governing such cases at the time. Additionally, there was no assurance that absent proof of bad faith, Plaintiffs' attorneys would recover attorneys' fees even if they were successful on the merits of the case. In other words, the risk of nonpayment involved an additional risk over and above the uncertainties of success or failure on the merits.

■ The Court finds that the Plaintiffs' counsel in the case *sub judice* should be compensated with an upward adjustment of the lodestar due to the contingency nature of the fee relationship and the risk of non-

payment. Therefore, the Court will calculate the contingency enhancement in order to provide the Plaintiffs with a reasonable attorneys' fee award. (*See* Appendices A, B, C and D.)

### (2) Risk of Delay in Receipt of Payment

It is significant to note the Supreme Court's approval and acceptance of delay-in-receipt adjustments of fee awards in the *Delaware Valley* case. The White plurality notes that "courts have regularly recognized the delay factor either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value. (Citations omitted).... We do not suggest ... that adjustments or delay are inconsistent with the typical fee-shifting statute." — U.S. at ——, 107 S.Ct. at 3081. Moreover, it is clear that the dissent also views delay in payment adjustments as mandatory in arriving at a reasonable fee. — U.S. at ——, 107 S.Ct. at 3098. Thus, Plaintiffs' legal entitlement to adjustment for delay in receipt of payment in the present case is beyond question.

The Defendants contend that Plaintiffs' attorneys should be compensated at hourly rates which were historically in effect at the time services were rendered, without adjustment for the fact that such services were performed (but no payment made at the time) up to fifteen years ago. The Defendants reason that "there was no long delay in recovery of fees attributable to the Defendants." Defendants' Contentions at p. 31.

The purpose of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. A. § 1988 is to permit the attorneys for a prevailing civil rights litigant to recover a fully compensatory fee. *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The goal of an attorney's fee awarded in a § 1983 case is to provide fair and reasonable compensation to the prevailing party's attorney in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter.

*Davis v. County of Los Angeles,* 8 E.P.D. Par. 9444 (C.D.Cal.1974), cited with approval in *Hensley,* 461 U.S. at 431, 103 S.Ct. at 1938. Historical hourly billing rates represent the prevailing rate for clients who typically pay their bills promptly. *Copeland v. Marshall,* 641 F.2d 880, 893 (D.C. Cir.1980) *(en banc).*

Payment ten or fifteen years after the services were rendered at rates prevailing at the time the services were performed does not produce a fully compensatory fee because payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime, which use, particularly in an inflationary era, is valuable. *Copeland* at 893; *Graves v. Barnes,* 700 F.2d 220, 223 (5th Cir.1983). Such delay obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one. As a result, district courts should take into account inflation and interest. Courts do not prescribe any set method for correcting for delay in payment, but some form of correction must be undertaken. *Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205, 1211 (11th Cir.1983).

In making the adjustment required to produce a fully compensatory fee in a case where legal services were rendered considerably before payment therefor was received, the courts have promulgated two alternative approaches: the "inflation-adjusted" historical rates approach, *Riddell v. National Democratic Party,* 712 F.2d 165, 167 (5th Cir.1983), and the current or present "prevailing market rates" convention. The former (inflation-adjusted historical rates) approach is typified by *Morgado v. Birmingham–Jefferson County Civil Defense Corps,* 706 F.2d 1184, 1193–94 (11th Cir.1983). This method involves computation of a "lodestar" award based upon historical rates in effect at the time the services were rendered and then an upward adjustment reflecting and compensating for the delay in receipt of payment, either by utilization of some form of "multiplier" or by awarding interest on attorneys' fees from a time closer to when the work was

performed. At least one court has characterized this methodology for computing reasonable attorneys' fees as more accurate than the current rates convention. *See Glover v. Johnson,* 531 F.Supp. 1036, 1046 (E.D.Mich.1982).

The Fifth Circuit has approved the use of the adjusted historical rates approach. *Van Ooteghem v. Gray,* 774 F.2d 1332, 1338 (5th Cir.1985); *Gates v. Collier,* 616 F.2d 1268, 1276 (5th Cir.1980). The *Gates* Court ruled that "[b]ecause a dollar today is worth more than a dollar in the future, 'the only way (an attorney) can be made whole is to award him interest from the time he should have received the money'" *Gates,* 616 F.2d at 1276, (quoting *Louisiana & Arkansas Railway Co. v. Export Drum Co.,* 359 F.2d 311, 317 (5th Cir. 1966)); *see also Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1096 n. 26 (5th Cir.1982). The Fifth Circuit, however, has sanctioned use of the "current rates convention", as well. *See Van Ooteghem,* 774 F.2d 1332; *Graves,* 700 F.2d 220.

In sum, adjusting the historical hourly rates to reflect delay in receipt of payment does no more than place the parties in precisely the respective economic postures each of them would have been in and should have been in if the payment had been made when the services were rendered. The adjustment does not penalize the Defendants, nor does it provide a windfall to the Plaintiffs. *Gautreaux v. Chicago Housing Authority,* 690 F.2d 601, 613 (7th Cir.1982); *Gates,* 616 F.2d at 1275.

In the present case, the Court makes the following findings of fact with respect to the delay in receipt of payment adjustment.

1. Plaintiffs' counsel acted properly in not requesting an interim award for fees at earlier stages in the case. First, the courts discourage and disfavor piecemeal, fractionalized litigation, including piecemeal litigation of attorneys' fee issues. Second, earlier applications would have been significantly incomplete until the jail was completed, move-in had been accomplished and sufficient staffing had been achieved.

Third, the Defendants communicated to Plaintiffs' counsel their threat to cease cooperating in implementation of the substantive relief ordered by the Court if Plaintiffs' counsel sought attorneys' fees earlier. (Testimony of Messrs. Oitzinger and Birnberg).

2. The original Complaint filed in this case specifically requested attorneys' fees. Moreover, the Plaintiffs' counsel discussed with Ed Landry, the Defendants' attorney at the time, their intention to file fee petitions and Mr. Landry discussed the matter with his co-counsel, Anthony Shepherd, as early as 1976.

3. Defendants have shown no actual prejudice resulting to them from Plaintiffs' counsel not having filed a petition for interim attorneys' fees earlier. There are no missing material witnesses. Both lawyers who represented the Defendants throughout these proceedings are still available and have testified in this case. Defendants have wholly failed to point to any specific item of actual prejudice which has purportedly undermined their ability to defend against the instant fee applications as a result of Plaintiffs not having sought interim relief earlier.

4. For many years, Defendants have had the use of the funds, and they have benefitted substantially from Plaintiffs' counsels' not having sought earlier interim fee awards.

5. Delay in receipt of payment, by depriving the recipient of the use of the money, dilutes the value of any sums ultimately received.

6. Delay in receipt of payment can convert an otherwise reasonable fee into an unreasonably low one; thus, basing a fee award in this case on unadjusted historical rates in effect at the time the services were rendered without adjustment for the delay in receipt of payment would produce an unreasonably low fee.

7. Customary rates are based on an assumption of relatively prompt payment by fee-paying clients. Thus, customary historical rates do not subsume factors for delay in receipt of payment.

The Court concludes that based on the applicable law and the facts of the case the Plaintiffs in the action at bar should receive a lodestar award based upon historical rates in effect at the time the services were rendered and then an upward adjustment reflecting and compensating for the delay in receipt of payment. (*See* Appendices A, B, C, and D.)

G. *Johnson* Factor Number Eight:

The Amount Involved and the
Results Obtained

According to the evidence, millions of dollars have been involved in the present litigation. Those sums include more than $80 million involved in building the new jail facility which was the most tangible result of this litigation. In addition, millions of dollars were involved to pay the additional jail guards necessary to provide security for inmates and in daily jail operating costs and expenses. In sum, millions of dollars in capital outlays were saved resulting from the reductions in jail populations effectuated by the relief sought by the Plaintiffs in the present case. (*See* Plaintiffs' Exhibits Nos. 51 and 56). The Court held in 1984, that the results in the case have been "prodigious." A partial list of the accomplishments which have been achieved from Plaintiffs' counsels' efforts in this lawsuit are set forth accurately at pages 29–31 of the Birnberg Affidavit. Virtually each and every one of those accomplishments was achieved over and despite the vigorous objection and active resistance of the Defendants. Clearly, the active resistance of the Defendants throughout these proceedings cannot even be fairly characterized so benignly as "resigned submission" and certainly not as "willing concession," as the Defendants now insist. *See Harris v. City of Fort Myers*, 624 F.2d 1321, 1325 (5th Cir.1980).

Settled law holds that a defendant who contends that his conduct was a wholly gratuitous response to a lawsuit that lacked colorable merit, must demonstrate the worthlessness of the plaintiff's claim and explain why he nonetheless voluntarily gave the plaintiffs the requested relief. *Hennigan v. Ouachita Parish School*

*Board,* 749 F.2d 1148 (5th Cir.1985). *See also Prudential–Bache Securities, Inc. v. Matthews,* 627 F.Supp. 622, 625–26 (S.D. Tex.1986) (In attorneys' fee litigation defendants have the burden of proving that there existed no causal connection between the institution of the litigation by the plaintiffs and the benefits subsequently conferred on the plaintiffs' class).

■ In the present action, the Defendants have failed to demonstrate that their efforts toward effectuating a constitutional detention program were undertaken wholly "gratuitously for reasons unrelated to the potential merit of the suit." *Hennigan,* 749 F.2d at 1149.

Prior to 1983, attorneys' fee awards in federal court were more or less routinely enhanced to reward prevailing attorneys for obtaining excellent results. *See, e.g., Williams v. Heard,* 568 F.Supp. 89, 91 (S.D.Tex.1983); *Ruiz v. Estelle,* 553 F.Supp. 567, 595 (S.D.Tex.1982); *Graves v. Barnes,* 700 F.2d 220, 223–24 (5th Cir. 1983).

In 1983, the Supreme Court of the United States confirmed the legitimacy of such enhancements, at least in theory, in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). There the Supreme Court ruled, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained'.... Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, and in some cases of exceptional success an enhanced award may be justified." *Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1940.

In 1984, the Supreme Court reaffirmed its *Hensley* holding that in some cases of exceptional success an enhanced award may be justified. The Supreme Court provided additional guidelines for ferreting out those "exceptional" cases in which such a multiplier would be appropriate. *Blum,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891. In *Blum,* the Supreme Court held that an upward adjustment of the basic lodestar fee may be appropriate to produce a fully compensatory fee, particularly where the lodestar rate does not subsume results obtained in its calculation, but is based upon a rate which would be applicable irrespective of the outcome.

After *Blum,* lower courts have continued to increase basic fee awards by multipliers, although the standard for triggering such enhancements seems to have been heightened somewhat from "excellent" results to "exceptional" results. *See, e.g., Garrity v. Sununu,* 752 F.2d 727, 739 (1st Cir.1984) (20% bonus); *Clayton v. Thurman,* 775 F.2d 1096, 1098 (10th Cir.1985) (33% fee enhancement in jail case).

In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), the Supreme Court again considered the issue of the appropriate standard governing fee awards in a case involving enhancement to reflect "superior quality of representation rendered by Plaintiffs' counsel." *Delaware Valley,* 478 U.S. at 565, 106 S.Ct. at 3098. In that case, the Court affirmed that upward adjustments to the lodestar figure are still permissible, although the Court indicated in that case that such modifications are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts. *Delaware Valley,* 478 U.S. at 564–65, 106 S.Ct. at 3098. The Supreme Court did clarify in *Delaware Valley* that the merely "superior quality" of counsel's performance was not the equivalent of the exceptional circumstances which are necessary to justify an upward adjustment (assuming that the special skill and experience of counsel, the novelty and complexity of the issues presented and the quality for representation are all taken into account in determining the applicable hourly rate). Where exceptional circumstances are present, however, an otherwise presumptively reasonable fee predicated upon hours expended multiplied by prevailing rates, may not, in fact, be a reasonable attorney's fee, nor a fully compensatory

one. In such instances, an upward adjustment may be necessary, where justified by the evidence. Upward adjustments based on exceptional results should not be awarded as a matter of course, but are reserved for the rare case in which counsel obtained truly exceptional results. *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 537 (5th Cir.1986).

■ The Court finds that at least three separate considerations constitute "exceptional" circumstances which make adjustment above the "lodestar" computation necessary to produce a reasonable fee in this significant case:

(1) Prevailing rates for attorneys do not take into account the considerable expertise possessed by Plaintiffs' counsel concerning the extraordinarily complex interplay of issues involved in effectuating reduction of jail populations in Harris County, Texas. Plaintiffs' counsel were not merely competent, nor even superior in their performance of duties to their clients in this case. The Court accepts the opinion of the Assistant County Attorney handling the case at the time who acknowleged in his deposition testimony, that they were the only people in Harris County, Texas, at the time who could effectively address and propose workable solutions for the multiple complex issues at hand and raised by this lawsuit. (Deposition of Ed Landry at 17–18).

(2) This case possessed the exceptional aspect that the Plaintiffs' counsel have not only secured extensive relief for their clients (the Plaintiff class), but they also have been individually responsible for saving the Defendant County large amounts of money by effectuating reductions in average daily jail populations. Moreover, the public interest has been significantly benefitted by the considerably speedier trials which have resulted from the modernization of the criminal justice system in Harris County which was the product of implementation of the relief sought and obtained by Plaintiffs' counsel's efforts.

(3) The results obtained for the Plaintiff class are of such magnitude that merely lodestar computation payment would not adequately compensate Plaintiffs' counsel for their services rendered in this particular case.

The Court finds that based on the circumstances of this case and the applicable law, the Defendants' opposition is without merit. The Court further finds that the affidavits submitted by counsel with the fee petitions attest to the attorneys' qualifications and experience in civil rights litigation. Accordingly, the Court concludes that the Petitioners' experience, reputation, skill, and ability played a significant role in Plaintiffs' success in this litigation and the exceptional results reached by Plaintiffs merit an upward adjustment in order to produce a reasonable attorneys' fee.

H. *Johnson* Factor Number Nine:

### The Experience, Reputation, And Ability of the Attorneys

*Johnson* factor No. 9 requires the Court to consider the "experience, reputation, and ability of the attorneys." The *Johnson* Court recognized that "most fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation." *Johnson*, 488 F.2d 714, 718–19. This factor deserves particular emphasis in the fee award. *Copper–Liquor, Inc. v. Adolph Coors Co.* 624 F.2d 575, 583 (5th Cir.1980). Specifically, the United States Supreme Court has held that if a young attorney demonstrates the necessary skill and ability, he should not be penalized for only recently being admitted to the bar. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719.

The Defendants claim that "Mr. Oitzinger is not entitled to even the minimum which this Court had paid the most inexperienced trial attorneys." *See* Defendants' Proposed Findings of Fact Nos. 50, 56, 57, 58, 91 and 92.

Congress specifically confirmed that *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974) set forth the "appropriate standards," S.Rep. No. 94–1011, 94th Cong., 2d. Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5913, presumably including the "appropriate" role of the "experience" factor in determin-

ing an available legal fee under § 1988. *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

The Court finds that based on the circumstances of this case and the applicable law, the Defendants' contention as to Mr. Oitzinger is without merit. The Court further finds that the affidavits submitted by counsel with the fee petitions attest to the attorneys' qualifications and experience in civil rights litigation. Accordingly, the Court concludes that the Petitioners' experience, reputation, skill and ability played a significant role in Plaintiffs' success in this litigation, and their expertise will be considered accordingly in the adjustment of the lodestar. (*See* Appendices A, B, C and D.)

### I. *Johnson* Factor Number Ten:

### The Undesirability of the Case

*Johnson* requires the Court to evaluate the undesirability of a particular case in order to determine a reasonable attorney's fee. The undesirability of a case can have an economic impact which requires that the customary standard billing rate be adjusted upward in order to produce a fully compensatory fee. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 719 (5th Cir. 1974).

Though denying it in Answers to Interrogatories, Defendants now concede that representation of the Plaintiffs in the *Alberti* case would be "undesirable to the private practitioner." Defendants' Contentions at pp. 29–30. Defendants specifically request that the Court disregard *Johnson* factor no. 10 (the undesirability of the case) because "it would demean the noble purpose (of taking on unpopular but socially important cases and causes)". Defendants' Contentions at pp. 29–30.

Pursuant to settled law, the motive of the lawyer representing the prevailing Plaintiffs is totally irrelevant to a determination of a reasonable fee under the Civil Rights Attorneys' Fees Awards Act of 1976. *See, e.g., Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) (*en banc*) ("the fee calculus does not change ... simply be-

cause of the fortuity of the identity of Plaintiffs' counsel").

Moreover, the district court is not empowered to disregard one of the *Johnson* factors, even if it were inclined to do so. *Nisby v. Commissioners Court of Jefferson County,* 798 F.2d 134, 136 (5th Cir. 1986); *Sims v. Jefferson Downs Racing Association, Inc.,* 778 F.2d 1068, 1084 (5th Cir.1985). Therefore, the Court will evaluate the attorneys' fee award in the instant action in terms of the "undesirability" factor as required by the *Johnson* decision. (*See* Appendices A, B, C and D.)

This Court, in its March 2, 1984 Order (on interim attorneys' fees) has previously ruled that, "[t]he undesirability of the case is apparent from the nature of the case.... [t]he case was and is an undesirable one...." Court Order of March 2, 1984 at p. 10. Previous defense counsel in the action at bar have noted that attorneys in private practice would charge a higher than "customary" fee to undertake representation in an "undesirable" case. (Ed Landry Deposition at p. 102; Anthony Sheppard Deposition at pp. 164–68).

An unpopular cause will affect the market value of the legal services rendered, *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 638 (6th Cir.1979), necessitating an increase above the customary rates to produce a fee at which competent counsel in private practice would be willing to accept such cases from fee-paying clients. *Leroy v. City of Houston,* 648 F.Supp. 537, 577 (S.D.Tex. 1986). Moreover, courts have held that prisoners' rights litigation is inherently undesirable. *Martino v. Carey,* 568 F.Supp. 848, 851 (D.Or.1983); *Ruiz v. Estelle,* 553 F.Supp. 567, 593 (S.D.Tex.1982).

■ Accordingly, the Court finds that the present case involves "undesirability" elements in at least three distinct respects:

a. The general negative stigma which is commonly associated with corrections litigation. Court's Order of March 2, 1984 at p. 10; *Martino v. Carey,* 568 F.Supp. 848, 851 (D.Or.1983);

b. The significant physical unpleasantness attendant to representation of the Plaintiff class in the present case. Plaintiffs' counsel had to expend and endure scores of hours in the oppressive, unpleasant and intimidating conditions of the Harris County detention facilities as they existed at the time. (Landry Deposition at p. 102; Sheppard Deposition at pp. 167–168);

c. The public villification of Plaintiffs' counsel in this case specifically engendered by Defendants "for the purpose of mobilizing public sentiment in their favor." *See* Court's Order of April 9, 1985 at p. 14 (which conduct was essentially admitted by Judge Lindsay in his deposition (Lindsay Deposition at pp. 41–44), and established by the credible testimony of Plaintiffs' counsel).

The Court concludes that the Plaintiffs have discharged their burden of demonstrating by convincing credible evidence that it is necessary to adjust the "customary" fee otherwise applicable to Mr. Oitzinger's services upward by an increase of Five Dollars ($5) per hour. This is done in order to produce a fee which reflects the otherwise "customary rate" at which competent counsel would be willing to undertake representation in similar cases possessing similar "undesirability" features, and thus fairly to compensate Mr. Oitzinger for the "undesirability" aspects of the case. (*See* Appendices A, B, C and D.)

The Court further concludes that the Plaintiffs have discharged the burden of demonstrating by convincing credible evidence that it is necessary to adjust the "customary" fee otherwise applicable to Mr. Birnberg's services upward by an increase of Five Dollars ($5) per hour. This is done in order to produce a fee which reflects the otherwise "customary rate" at which competent counsel would be willing to undertake representation in similar cases possessing similar "undesirability" features, and thus fairly to compensate Mr. Birnberg for the "undesirability" aspects of the case. (*See* Appendices A, B, C and D.)

### J. *Johnson* Factor Number Eleven:

The Nature and Length of The Professional Relationship With The Client

This factor has no application in the current case.

### K. *Johnson* Factor Number Twelve:

Awards in Similar Cases

As required by *Johnson* factor no. 12, the Court has considered awards in similar cases as a guidepost for determining the reasonableness of the fees to be awarded in the present case. The Court has considered all the cases to which its attention has been directed by the parties in the present litigation. Although the Court has considered all such cases, the Court deems the following cases to be of particular significance and usefulness in determining the lodestar fee in the present case:

*Historical Rates Cases:*

1. *Foster v. Boise–Cascade, Inc.,* 420 F.Supp. 674, 692 (S.D.Tex.1976);

2. *Cruz v. Beto,* 453 F.Supp. 905 (S.D. Tex.1977);

3. *Tasby v. Wright,* 550 F.Supp. 262, 276 (N.D.Tex.1982);

4. *Brown v. Culpepper,* 559 F.2d 274 (5th Cir.1977);

5. *Wheeler v. Mental Health and Mental Retardation Authority,* 752 F.2d 1063, 1073 (5th Cir.1985);

6. *Harkless v. Sweeny Independent School District,* 466 F.Supp. 457, 465 (S.D.Tex.1979);

7. *Corpus v. Estelle,* 605 F.2d 175, 180–81 n. 10 (5th Cir.1979);

8. *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 582 (5th Cir. 1980);

9. *Corpus v. Estelle,* No. 68–H–348 (S.D.Tex.1980);

10. *Stenson v. Blum,* 512 F.Supp. 680 (S.D.N.Y.1981), *aff'd,* 671 F.2d 493 (2d Cir.1981), *aff'd in part and rev'd in part,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984);

11. *Neely v. City of Grenada,* 624 F.2d 547 (5th Cir.1980);

12. *Alberti v. Sheriff of Harris County*, No. H–72–1094 (S.D.Tex.1984) (Court's Order of March 2, 1984);

13. *Chescheir v. Liberty Mutual Insurance Company*, 713 F.2d 1142, 1150 n. 3 (5th Cir.1983);

14. *Williams v. Heard*, 568 F.Supp. 89, 91 (S.D.Tex.1983);

15. *Ruiz v. Estelle*, 553 F.Supp. 567 (S.D.Tex.1982);

16. *Coble v. Texas Department of Corrections*, 568 F.Supp. 410, 513 (S.D.Tex. 1983);

17. *Sebastian v. Texas Department of Corrections*, 558 F.Supp. 507 (S.D.Tex. 1983);

18. *Commonwealth Lloyd's Insurance Company v. Thomas*, 678 S.W.2d 278 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.);

19. *Texas State Teachers Association v. San Antonio Independent School District*, 584 F.Supp. 61 (W.D.Tex.1983);

## V. (a.) FEES FOR LITIGATING FEE ISSUE

### A. Generally

Since at least 1979, it has been firmly established in the Fifth Circuit that a fee award under § 1988 must include an amount for time reasonably expended (and expenses incurred) litigating the fee claim itself. *Johnson v. Mississippi*, 606 F.2d 635 (5th Cir.1979); *Knighton v. Watkins*, 616 F.2d 795, 800 (5th Cir.1980) ("It is now settled that the lawyer must be paid for the effort entailed in securing compensation."); *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir.1985). If district courts have any discretion at all to deny a prevailing plaintiff a reasonable, fully compensatory attorney's fee for litigating the fee issue, that discretion "is exceedingly narrow." *Ellwest Stereo Theatre, Inc. v. Jackson*, 653 F.2d 954, 955 (5th Cir.1981); *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir.1985).

This Court had anticipated that result at *Cruz v. Beto*, 453 F.Supp. 905, 909 (S.D. Tex.1977) (correctly interpreting *Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534, 539 (5th Cir.1970) as requiring that

result); *see also Foster v. Boise–Cascade, Inc.*, 420 F.Supp. 674, 692 (S.D.Tex.1976).

### B. Opposition By § 1988 Defendants

"Defendants are not required to lie supine.... They are entitled to resist vigorously. The right to determined contest, however, has a concomitant duty: the obligation to pay reasonably for the effort that a defense exacts from opposing counsel if the claim proves to be meritorious." *Knighton v. Watkins*, 616 F.2d 795, 799 (5th Cir.1980). Accordingly, "(a) losing party ... would be well-advised to contest only those attorney fee issues, factual or legal, as to which there is ground for fair dispute. Otherwise, the successful party is afforded the opportunity to expand the basic fee dispute itself into a substantial fee generating proceeding." *Arizona v. Maricopa County Medical Society*, 578 F.Supp. 1262, 1276 (D.Ariz.1984).

■ Where Defendants' strenuous opposition to a motion for fees substantially escalates the number of hours required by Plaintiffs' attorneys to substantiate and defend their fee requests, substantial fee awards for litigating the fee claims are fully justified. *Williamsburg Fair Housing Committee v. Ross–Rodney Housing Corp.*, 599 F.Supp. 509, 522 (S.D.N.Y.1984).

### C. Time Spent Preparing Fee Petition

■ The compensation for time expended litigating fee issues should include compensation for time expended compiling the time and financial records and preparing the fee petition itself. *Riddell v. National Democratic Party*, 712 F.2d 165, 171 (5th Cir.1983) (reversing district court decision for failure to allow "26.2 hours for compiling the time and financial records").

The rule permitting recovery for time spent preparing the fee petition itself applies even where the time is spent preparing so-called "reconstructions" required by the absence of contemporaneous time records. *Gautreaux v. Chicago Housing Authority*, 690 F.2d 601, 612 (7th Cir.1982); *Bolden v. Pennsylvania State Police*, 491 F.Supp. 958, 964 (E.D.Pa.1980).

**D. Association of Special Fee Counsel**

■ Under § 1988, where prevailing plaintiffs are entitled to compensation for the time expended litigating fee issues, the services of an independent or special counsel to assist in the prosecution of the fee claim are justifiable as are the expenses reasonably incurred by counsel. *Shadis v. Beal*, 703 F.2d 71, 73 (3d Cir.1983); *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 366–68, 388 (D.D.C.1983), *aff'd in relevant part*, 746 F.2d 4, 29–30 (D.C.Cir.1984).

Although Mr. Birnberg and Mr. Oitzinger contributed significantly to the successful prosecution of the fee claims, both had considerable self interests at stake in this matter. In view of the circumstance and the apparent potential for conflict of interest due to the pendency of substantial "merits" issues, the Court finds that it was particularly appropriate in the present case for the Plaintiffs to associate Mr. White of the Susman firm to assist them in the presentation of the fee claims.

The Court has carefully scrutinized the fee petition by the firm of Susman, Godfrey & McGowan. (See Plaintiffs' Exhibit Nos. 60, 93 and 94). If such finding is a "conclusion of law" rather than a finding of fact, the Court concludes that Mr. White's fees were reasonable and appropriate. Under the circumstances of this litigation, the retention of Mr. White to assist in the prosecution of the fee applications was justified by the necessities of the case. *Jonas v. Stack*, 758 F.2d 567, 569 (11th Cir.1985).

**VI. OMBUDSMAN ISSUE**

On December 16, 1975, this Court directed that an Office of the Ombudsman be established to monitor Defendants' efforts to comply with the Court's Order and to fulfill the mandate and requirements of the Consent Judgment. The Court directed that Mr. Oitzinger "head" this Office and that it "include" Mr. Birnberg. The Court specifically directed that "(t)he appointment of Mr. Oitzinger and Mr. Birnberg to the Office of the Ombudsman shall not preclude their continuing representation of plaintiffs in this lawsuit." *Alberti v. Sher-iff of Harris County, Texas*, 406 F.Supp. 649, 678 (S.D.Tex.1975). The directive from the Court that Messrs. Oitzinger and Birnberg serve in the Office of the Ombudsman was completely unsolicited by Plaintiffs' counsel.

In ordering the creation of the Office of the Ombudsman and directing that it "include" Messrs. Oitzinger and Birnberg, the Court never intended that those lawyers function as "an arm" or "an agency" or any other functionary of the Court. This Court had articulated its concept of the role of an "Ombudsman" in *Dreyer v. Jalet*, 349 F.Supp. 452, 489–91 (S.D.Tex.1972), where the Court stressed its notion that an "Ombudsman" should be a non-judicial functionary, unrelated to the court system.

In 1984, the Court did comment in its attorneys' fee Order that, "the Ombudsman was to function as the eyes and ears of the Court to insure compliance with the Court's Order and Consent Judgment." Court's Order of March 2, 1984 at p. 3. The Court did not thereby mean to imply that it was looking to Plaintiffs' counsel to discharge or perform any function of a quasi-judicial nature, or as an agency or surrogate of the Court. Even after the Court made its "eyes and ears" comment in March of 1984, Defendants made no claim of conflict of interest or impropriety until their Post–Submission Memorandum was filed with the United States Court of Appeals for the Fifth Circuit in January of 1986—nearly two years later.

As the Fifth Circuit held, "[i]t is evident that throughout this litigation the district court and all of the parties recognized and accepted that the Ombudsman has functioned as an advocate for the inmates. The district court in appointing the ombudsman did not expressly cite Rule 53, for no quasi-judicial office was contemplated. Instead, the Court simply formalized the plaintiffs' attorney's role in aiding the enforcement of (the) court decree." *Alberti v. Klevenhagen*, 790 F.2d 1220, 1230 (5th Cir.1986).

The concurring opinion of Circuit Judge John R. Brown, which was more critical of the dual roles of Plaintiffs' counsel and Ombudsman than was the majority opinion

of the panel, absolves the Plaintiffs' lawyers from fault, taint or blame arising from this circumstance: "My criticism is addressed to the Judge, not the counsel, whose actions in accepting this role are completely ethical." *Alberti v. Klevenhagen,* 790 F.2d 1220, 1232 n. 3 (5th Cir.1986) (Brown, J., concurring).

In light of the Fifth Circuit's mandate, this Court appointed Special Masters in the present case on April 28, 1987, and the Court granted the request of Messrs. Oitzinger and Birnberg to be removed from the Office of the Ombudsman.

## VII. COSTS AND EXPENSES

Prior to their post-trial submissions, Defendants did not challenge, contest or oppose in any way Plaintiffs' request for reimbursement of out-of-pocket costs and expenses. Having failed to object prior to the conclusion of trial, Defendants waived any objection to any of the out-of-pocket costs and expenses for which Plaintiffs have sought reimbursement. *Stewart v. Lubbock County, Texas* 767 F.2d 153, 157 (5th Cir.1985).

In enacting § 1988, Congress sought to make successful civil rights plaintiffs whole for the entire economic cost of litigating their constitutional claims: "If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." S.Rep. No. 94–1011, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5910.

### A. Computer–Assisted Legal Research

■ Plaintiffs have included in their application for payment of attorneys' fees a request that they be reimbursed for expenses of Westlaw computer services utilized in preparing legal memoranda in the case. This federal district has long recognized the recoverability of such expenses as part of an award of attorney's fees under § 1988 in civil rights cases. *Guajardo v. Estelle,* 432 F.Supp. 1373, 1388–89 (S.D.Tex.1977).

Computer-assisted legal research expenses are deemed to be and constitute "a component of attorney's fees", *Friedlander v. Nims,* 583 F.Supp. 1087 1089 (N.D. Ga.1984), because "computer assisted legal research replaces attorney efforts". *Equal Employment Opportunity Commission v. Sears, Roebuck & Co.,* 111 F.R. D. 385 (N.D.Ill.1986).

Therefore, the Court finds that pursuant to the applicable law and the circumstances of the present case, Plaintiffs' counsel should be reimbursed for computer-assisted legal research.

### B. Depositions

■ In their Proposed Findings of Fact No. 280, Defendants object for the first time to the payment of deposition and transcription costs. That argument is precluded not only by its tardiness, *Stewart v. Lubbock County, Texas,* 767 F.2d 153, 157 (5th Cir.1985), but also, and more importantly, because prevailing parties are entitled to have the losing party pay all costs, including the expense of depositions. *Bhandari v. First National Bank of Commerce,* 808 F.2d 1082 (5th Cir.), *reh'g granted,* 812 F.2d 936 (5th Cir.1987). The district court does not have authority to split such items of expense between the parties. Once they have been classified as costs they must be taxed against the losing party and awarded *in toto* to the prevailing party.

### C. Certified Copies, Travel Expenses, Copies of Depositions, Photocopies, Delivery Charges, Certified Mail, Long Distance Telephone Charges and Similar Expenses

To the extent these items were "necessarily obtained for use in the case, they are compensable. *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 713 F.2d 128, 133–34 (5th Cir.1983); *United States v. Kolesar,* 313 F.2d 835, 839 (5th Cir.1963). Defendants in the present case do not argue that these expenses were incurred primarily for the convenience of the parties, nor do they dispute that the expenses were necessarily incurred for use in the case.

The Court finds that all of the out-of-pocket costs and expenses for which reimbursement has been sought by the Plaintiffs were necessarily obtained for use in the case.

### D. Expert Witness Fees

Plaintiffs in the case at bar request reimbursement for out-of-pocket costs for expert witnesses. Defendants in the case *sub judice* did not contend prior to or at trial that such expenses were not recoverable. In their Proposed Finding of Fact No. 280, however, Defendants assert that such expenses are "not allowed under § 1988 because (they are) not per se attorney's fees."

██ In June of 1986, the *en banc* United States Court of Appeals for the Fifth Circuit held that the fees of non-court-appointed expert witnesses are taxable by federal courts in non-diversity cases only in the amounts specified by 28 U.S.C. § 1821, except that fees in excess of that amount may be taxed when expressly authorized by Congress, or when one of the three exceptions recognized by *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 257–59, 95 S.Ct. 1612, 1621–22, 44 L.Ed.2d 141 (1975) applies. *International Woodworkers of America v. Champion International Corp.*, 790 F.2d 1174, 1181 (5th Cir.1986) (*en banc*). The Court there expressly held that 42 U.S.C. § 1988 does not authorize the assessing of excess non-court-appointed expert witness fees against the losing party.

On June 15, 1987, the Supreme Court of the United States rendered its decision in the *International Woodworkers* case and in the companion case of *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, —— U.S. ——, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), thereby affirming the prior decision by the Fifth Circuit.

The Court is of the opinion that Plaintiffs' request for reimbursement of non-Court appointed expert witness fees should be limited pursuant to 28 U.S.C. § 1821.

## VIII. CONCLUSION

After judicious and exhaustive consideration of the submissions by the parties, the applicable law and the particular circumstances of the case, the Court finds that the following attorneys' fee awards and reimbursement for expenses should be made:

James Oitzinger Fee Award $1,502,610.40

Additional Fee Awards and
Reimbursement of Expenses to James Oitzinger:[3]

|  | Hours | Hourly Rate | Award |
|---|---|---|---|
| Paralegal Time | 19.0 | 45.00 | $    855.00 |
| Travel Time | 71.50 | 25.00 | 1,787.50 |
| Paralegal Time | 40.1 | 50.00 | 2,005.00 |
| Travel Time | 27.95 | 25.00 | 698.50 |
| Expenses |  |  | 22,887.08 |
| Total Additional Award |  |  | $28,233.08 |
| Grand Total Award for Attorney Oitzinger |  |  | $1,530,843.48 |

Bruce V. Griffiths Fee Award[4]

|  | Hours | Hourly Rate | Award |
|---|---|---|---|
|  | 322.10 | 150.00 | $48,315.00 |
| Travel Time | 8.25 | 25.00 | 206.05 |
| Grand Total Award for Attorney Griffiths |  |  | $48,521.05 |

---

**3.** The request by James Oitzinger for paralegal time, travel time, and expenses was not contested by the Defendants.

**4.** The request by Bruce V. Griffiths for attorney time and travel time was not controverted by the Defendants.

Patricia L. Day Fee Award[5]

| | Hours | Hourly Rate | Award |
|---|---|---|---|
| | 46.25 | 100.00 | $4,625.00 |
| Grand Total Award for Attorney Day | | | $4,625.00 |

Gerald Birnberg Fee Award $536,509.30

Additional Fee Awards and Reimbursement of
Expenses to Gerald Birnberg[6]

| | Hours | Hourly Rate | Fee Award |
|---|---|---|---|
| Partner Time (Anderson) | .25 | 200.00 | 50.00 |
| Associate Time (Bralow) | 14.10 | 90.00 | 1269.00 |
| Paralegals and Legal Assistants Attorney's Fees | | | |
| Litigation | 136.60 | 45.00 | 6147.00 |
| Witness Matters | 2.00 | 45.00 | 90.00 |
| "Merits Work" | 5.50 | 45.00 | 247.50 |
| TOTAL | | | $7,803.50 |

| | Amount of Reimbursement |
|---|---|
| Costs & Expenses | |
| Computer Research | $ 3601.00 |
| Delivery Charges | 444.00 |
| Deposition Costs & Expenses | 675.40 |
| Expert Witness Fees | |
| Pursuant to 28 U.S.C. § 1821 | 60.00 |
| Fee Counsel Fees Advanced | 9147.74 |
| Graphics & Exhibits | 2025.47 |
| Photocopying Charges | 1639.30 |
| Postage Charges | 41.65 |
| Special Masters Costs & Expenses | |
| Delivery Charges | 36.00 |
| Postage Charges | 40.00 |
| COSTS/EXPENSES TOTAL | $ 17,710.56 |
| Grand Total Award to Attorney Birnberg | $562,023.36 |

Susman, Godfrey & McGowan Fee Award[7]

| | Hours | Hourly Rate | Award |
|---|---|---|---|
| Elaine N. Malloy | .50 | 55.00 | 27.50 |
| William H. White | 118.00 | 160.00 | 18,850.00 |
| Robert A. Rowland, III | 1.00 | 175.00 | 175.00 |
| Terrell W. Oxford | 3.00 | 160.00 | 480.00 |
| Ann M. Schachtel | .25 | | 10.00 |
| Barbara A. Haskell | 10.20 | 55.00 | 561.00 |
| Total Fees | | | $20,103.50 |
| Expenses | | | 822.08 |
| Grand Total Award to Susman Firm | | | $20,925.58 |

5. The request by Patricia L. Day for attorney time was not challenged by the defense.

6. The Defendants failed to contest the request by Gerald Birnberg for partner time, associate time, and paralegal time. However, the Defendants did contest Mr. Birnberg's requests to reimbursement for expert witness fees, computer-assisted legal research, deposition costs and expenses, appointment of special counsel, graphic and exhibits and secretarial overtime. The Court has decided to limit reimbursement of expert witness fees pursuant to 28 U.S.C. § 1821. Moreover, the Court will not award secretarial overtime charges in the amount of $256.25 to the Plaintiffs' Counsel for the preparation of post-trial memoranda.

7. The Defendants have contested the Plaintiffs' request for fees in its entirety.

The Court has not taken into account the interim fee awards made to Plaintiffs' counsel by the Defendants. Counsel are directed to arrive at an appropriate calculation for crediting the Defendants for the payment of the interim awards.

## APPENDIX A

### BREAKDOWN OF TOTAL FEE REQUEST OF JAMES T. OITZINGER
### ON "HISTORICAL RATES" APPROACH AND ANALYSIS
### (EXCLUDING TRAVEL TIME - 89.45 HOURS)

| Phase | Unadjusted "Customary Fee" | Add For Factor of: Preclusion of Other Employment | Add For Factor of: Case Undesirability | Hourly Fee Before Multipliers | Hours | Lodestar Amount | Contingency Multiplier | Exceptional Results Multiplier | Total Fee Request Before Inflation Adjustments | Delay In Receipt Of Payment Multiplier Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|
| Phase A 07/05/72 - 02/04/75 | $ 55.00 | $ 10.00 | $ 10.00 | $ 75.00 | 1,187.60 | $ 89,070.00 | 33 1/3% | 50% | $165,292.03 | 3.73 |
| Phase B 02/05/75 - 07/05/78 | 75.00 | 5.00 | 10.00 | 90.00 | 2,127.60 | 191,484.00 | 33 1/3% | 40% | 331,899.22 | 2.97 |
| Phase C 07/05/78 - 09/14/78 | 85.00 | 5.00 | 10.00 | 100.00 | 197.25 | 19,725.00 | | 10% | 21,697.50 | 2.69 |
| Phase D 09/15/78 - 05/22/82 | 100.00 | | 10.00 | 110.00 | 1,146.23 | 126,085.30 | | 10% | 138,693.43 | 1.72 |
| Phase E 05/23/82 - 05/20/83 | 125.00 | | 10.00 | 135.00 | 475.75 | 64,226.25 | | 10% | 70,648.88 | 1.53 |
| Phase F 05/21/83 - 12/19/84 | 125.00 | | 10.00 | 135.00 | 792.47 | 106,983.45 | | 20% | 128,380.14 | 1.28 |
| Phase G 12/20/84 - 12/31/85 | 160.00 | 10.00 | | 170.00 | 725.29 | 123,299.30 | | 20% | 147,959.16 | 1.16 |
| TOTAL "MERITS" FEE REQUEST BEFORE ADJUSTMENT FOR INFLATION | | | | | 6,652.19 | $ 728,873.30 | | | $1,002,570.76 | |
| Fee Litigation 01/01/86 - 12/03/86 | $ 180.00 | | | $ 180.00 | 279.90 | 50,382.00 | 33 1/3% | | $67,152.21 | 1.46 |
| TOTAL FEE REQUEST BEFORE ADJUSTMENT FOR INFLATION | | | | | 6,932.39 | $ 771,255.30 | | | $1,069,729.97 | |

# APPENDIX B

BREAKDOWN OF TOTAL FEE AWARD TO JAMES OITZINGER
BASED ON "HISTORICAL RATES" APPROACH AND ANALYSIS
JULY 5, 1972 TO DECEMBER 3, 1986

| PHASE | UNADJUSTED "CUSTOMARY" FEE | PROFESSION OF OTHER EMPLOYMENT | CASE UNDESIRABILITY | HOURLY FEE BEFORE MULTIPLIERS | HOURS | LODESTAR AMOUNT | CONTINGENCY MULTIPLIER | EXCEPTIONAL RESULTS MULTIPLIERS | TOTAL FEE REQUEST BEFORE INFLATION ADJUSTMENTS | DELAY IN RECEIPT OF PAYMENT MULTIPLIER ADJUSTMENT | TOTAL FEE AWARD AFTER INFLATION ADJUSTMENT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **HOURS** | | | | | | | | | | | |
| **Phase A** 01/05/72– 02/04/75 | A $ 55.40, B 50.00 C 45.00 | $ 5.00 5.00 5.00 | $ 5.00 5.00 5.00 | $ 65.00 × 60.00 × 55.00 × | 129.50 494.80 563.30 1,187.60 | 8,417.50 29,688.00 30,981.50 69,087.00 | 25% | 25% | $ 103,630.50 | 2.73 = $ 264,911.27 | |
| **Phase B** 02/05/75– 07/05/78 | A > 75.00 B 65.00 C 60.00 | $ 5.00 5.00 5.00 | $ 5.00 5.00 5.00 | $ 85.00 × 75.00 × 70.00 × | 296.25 744.55 1,086.80 2,127.60 | 25,181.25 55,841.25 76,076.00 157,098.50 | 25% | 25% | > 235,647.75 | 2.54 = $ 598,545.29 | |
| **Phase C** 07/05/78– 08/14/78 | A $ 85.00 B 75.00 C 70.00 | $ 5.00 5.00 5.00 | > 5.00 5.00 5.00 | $ 95.00 × 85.00 × 80.00 × | 133.25 16.50 65.25 215.00 | 12,658.75 1,402.50 5,220.00 19,281.25 | | 10% | $ 21,209.38 | 2.05 = $ 43,429.23 | |
| **Phase D** 05/15/78– 05/22/82 | A $100.00 B 90.00 C 85.00 | $ | $ 5.00 5.00 5.00 | $ 105.00 95.00 90.00 | 3.25 244.67 865.31 1,113.23 | 341.20 23,243.65 79,677.50 103,262.80 | | 10% | $ 113,509.08 | 1.50 = $ 170,263.62 | |
| **Phase E** 05/23/82– 05/20/83 | A $125.00 B 115.00 C 110.00 | $ | $ 5.00 5.00 5.00 | $ 130.00 × 120.00 × 115.00 × | 198.75 71.50 192.65 462.90 | 25,837.50 8,580.00 22,154.75 56,572.25 | | 10% | $ 62,229.48 | 1.47 = $ 91,477.34 | |
| **Phase F** 05/11/83– 12/19/84 | A $125.00 B 115.00 C 110.00 | $ | $ 5.00 5.00 5.00 | $ 130.00 × 120.00 × 115.00 × | 190.63 203.18 333.23 724.04 | 24,781.90 24,021.60 38,321.45 87,124.95 | | 10% | $ 95,437.45 | 1.36 = $ 130,338.93 | |
| **Phase G** 12/20/84– 12/31/85 | A $160.00 B 150.00 C 145.00 | $ 5.00 5.00 5.00 | $ 5.00 5.00 5.00 | $ 170.00 × 160.00 × 155.00 × | 73.30 364.04 220.75 658.09 | 12,461.00 54,246.40 34,216.25 104,923.65 | | 10% | $ 115,416.42 | 1.17 = $ 135,036.74 | |
| **Phase H** 01/01/86– 12/02/86 | All is fee litigation time | | | | | | | | | | |

A – Trial and Trial Preparation  
B – Legal Research and Related Work  
C – Conferences, Communications and Monitoring  

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL "MAINS" FEE BEFORE ADJUSTMENT FOR INFLATION | | | $ 170.00 × | 6,589.57 | $597,350.40 | | | $ 747,559.66 | | $1,432,172.42 |
| **FEE LITIGATION** 01/01/86– 12/02/06 | $120.00* | $120.00* | | 279.90 × | $ 47,563.00 | | | $ 47,563.00 | 1.06 = $ 50,437.98 | |
| TOTAL FEE BEFORE ADJUSTMENT FOR INFLATION | | | | 6,869.47 | $335,565.50 | | | $ 795,142.66 | | |
| | | | | | | | | | | $1,502,440.40 |

* From information supplied, $180.00 proposed hourly rate was averaged

## APPENDIX C

BREAKDOWN OF TOTAL FEE REQUEST OF GERALD M. BIRNBERG
ON "HISTORICAL RATES" APPROACH AND ANALYSIS

Page 1

| Phase | Unadjusted "Customary Fee" | Add For Factor of: | | Hourly Fee Before Multiplier | Hours | Lodestar Amount | Contingency Multiplier | Exceptional Results Multiplier | Total Fee Request Before Inflation Adjustments | Delay In Receipt Of Payment Multiplier Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Preclusion of Other Employment | Case Undesirability | | | | | | | |
| Phase I 06/20/75 – 12/16/75 | $ 75.00 | $ 10.00 | $ 10.00 | $ 95.00 | 273.00 | $ 25,935.00 | 33 1/3% | 50% | $47,546.64 | 3.50 |
| Phase II 12/16/75 – 07/02/76 | 75.00 | 5.00 | 10.00 | 90.00 | 211.50 | 19,035.00 | 33 1/3% | 25% | 30,138.12 | 3.38 |
| Phase III 07/03/76 – 12/03/76 | 75.00 | 5.00 | 10.00 | 90.00 | 133.50 | 12,015.00 | | 10% | 13,216.50 | 3.30 |
| Phase IV 12/04/76 – 07/05/78 | 75.00 | 5.00 | 10.00 | 90.00 | 99.50 | 8,955.00 | | 10% | 9,850.50 | 2.97 |
| Phase V 07/05/78 – 09/14/78 | 85.00 | 5.00 | 10.00 | 100.00 | 182.50 | 18,250.00 | | 10% | 20,075.00 | 2.89 |
| Phase VI 09/15/78 – 05/21/82 | 100.00 | 5.00 | 10.00 | 115.00 | 19.00 | 2,185.00 | | | 2,185.00 | 1.72 |
| Phase VII 05/22/82 – 08/05/82 | 130.00 | 10.00 | 10.00 | 150.00 | 177.50 | 26,625.00 | | 10% | 29,287.50 | 1.49 |

APPENDIX C—Continued

Page 2

| Phase | Unadjusted "Customary Fee" | Preclusion of Other Employment | Case Undesirability | Hourly Fee Before Multiplier | Hours | Lodestar Amount | Contingency Multiplier | Exceptional Results Multiplier | Total Fee Request Before Inflation Adjustments | Delay in Receipt Of Payment Multiplier Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|
| Phase VIII 04/07/82 – 11/04/86 | 225.00 | 225.00 | | | 225.00 | 29.55 | 6,648.75 | | | 6,648.75 | 1.07 |
| Phase IX 11/05/86 – 02/28/87 | 225.00 | 225.00 | | | 225.00 | 68.30 | 15,367.50 | | | 15,367.50 | 1.04 |
| Phase X 03/01/87 – 05/31/87 | 225.00 | 225.00 | | | 225.00 | 133.15 | 29,958.75 | | | 29,958.75 | |
| TOTAL "MERITS" FEE REQUEST BEFORE ADJUSTMENT FOR INFLATION | | | | | 1,327.59 | $164,975.09 | | | $294,274.25 | |
| Attorneys Fees: 10/25/85 – 11/04/86 | $ 225.00 | 225.00 | | | 225.00 | 669.60 | $ 150,660.00 | 33 1/3% | | $204,429.78 | 1.07 |
| Attorneys Fees: 11/05/87 – 02/28/87 | 225.00 | | | | 225.00 | 439.75 | 98,943.75 | 33 1/3% | | 131,921.70 | 1.04 |
| Attorneys Fees: 03/01/87 – 05/31/87 | 225.00 | | | | 225.00 | 10.50 | 2,362.50 | 33 1/3% | | 3,149.21 | |
| TOTAL FEE LITIGATION REQUEST BEFORE ADJUSTMENT FOR INFLATION | | | | | 1,119.85 | $ 251,966.25 | | | $335,900.69 | |
| TOTAL FEE REQUEST BEFORE ADJUSTMENT FOR INFLATION | | | | | 2,447.35 | $ 416,941.25 | | | $540,174.95 | |

# APPENDIX D

Page 1

BREAKDOWN OF TOTAL FEE AWARD TO GERALD H. BIRNBERG
BASED ON "HISTORICAL RATES" APPROACH AND ANALYSIS

| PHASE | UNADJUSTED "CUSTOMARY FEE" | PRECLUSION OF OTHER EMPLOYMENT | CASE UNDESIRABILITY | HOURLY FEE BEFORE MULTIPLIERS | | HOURS | LODESTAR AMOUNT | CONTINGENCY MULTIPLIER | EXCEPTIONAL RESULTS MULTIPLIERS | TOTAL FEE BEFORE INFLATION ADJUSTMENTS | DELAY IN RECEIPT OF PAYMENT MULTIPLIER ADJUSTMENT | TOTAL FEE AWARD AFTER ADJUSTMENT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **MERITS** | | | | | | | | | | | | |
| **Phase I** | | | | | | | | | | | | |
| 08/20/75– A | $ 75.00 | $ 5.00 | $ 5.00 | $ 85.00 | x | 166.00 | 14,110.00 | | | | | |
| 12/16/75 B | 65.00 | 5.00 | 5.00 | 75.00 | x | 94.00 | 7,050.00 | | | | | |
| C | 60.00 | 5.00 | 5.00 | 70.00 | x | 13.00 | 910.00 | | | | | |
| | | | | | | 273.00 | 22,070.00 | 25% | 25% $ | 33,105.00 | 2.54 = $ | 84,086.70 |
| **Phase II** | | | | | | | | | | | | |
| 12/16/75– A | $ 75.00 | $ 5.00 | $ 5.00 | $ 85.00 | x | 131.00 | 11,130.00 | | | | | |
| 07/02/76 B | 65.00 | 5.00 | 5.00 | 75.00 | x | 19.00 | 1,425.00 | | | | | |
| C | 60.00 | 5.00 | 5.00 | 70.00 | x | 61.50 | 4,305.00 | | | | | |
| | | | | | | 211.50 | 16,865.00 | 25% | 25% $ | 25,297.50 | 2.32 = $ | 58,690.20 |
| **Phase III** | | | | | | | | | | | | |
| 07/03/76– A | $ 75.00 | $ 5.00 | $ 5.00 | $ 85.00 | x | 15.50 | 1,162.50 | | | | | |
| 12/03/76 B | 65.00 | 5.00 | 5.00 | 75.00 | x | 118.00 | 8,260.00 | | | | | |
| C | 60.00 | 5.00 | 5.00 | 70.00 | x | 133.50 | 9,422.50 | | | | | |
| | | | | | | | | | 10% $ | 10,364.75 | 2.26 = $ | 23,424.34 |
| **Phase IV** | | | | | | | | | | | | |
| 12/04/76– A | $ 75.00 | $ 5.00 | $ 5.00 | $ 85.00 | x | | | | | | | |
| 07/05/78 B | 65.00 | 5.00 | 5.00 | 75.00 | x | 99.50 | 6,965.00 | | | | | |
| C | 60.00 | 5.00 | 5.00 | 70.00 | x | 99.50 | 6,965.00 | | | | | |
| | | | | | | | | | 10% $ | 7,661.50 | 2.07 = $ | 15,859.30 |
| **Phase V** | | | | | | | | | | | | |
| 07/05/78– A | $ 85.00 | $ 5.00 | $ 5.00 | $ 95.00 | x | 128.50 | 12,270.50 | | | | | |
| 09/14/78 B | 75.00 | 5.00 | 5.00 | 85.00 | x | 46.00 | 3,910.00 | | | | | |
| C | 70.00 | 5.00 | 5.00 | 80.00 | x | 8.00 | 640.00 | | | | | |
| | | | | | | 182.50 | 16,757.50 | | 10% $ | 18,433.25 | 2.05 = $ | 37,788.16 |
| **Phase VI** | | | | | | | | | | | | |
| 09/15/78– A | $100.00 | $ 5.00 | $ 5.00 | $110.00 | x | | | | | | | |
| 05/21/82 B | 90.00 | 5.00 | 5.00 | 100.00 | x | 19.00 | 1,805.00 | | | | | |
| C | 85.00 | 5.00 | 5.00 | 95.00 | x | 19.00 | 1,805.00 | | | $ | 1,805.00 | 1.50 = $ | 2,707.50 |
| **Phase VII** | | | | | | | | | | | | |
| 05/22/82– A | $130.00 | $ 5.00 | $ 5.00 | $140.00 | x | 121.50 | 17,010.00 | | | | | |
| 08/06/82 B | 120.00 | 5.00 | 5.00 | 130.00 | x | 54.00 | 7,020.00 | | | | | |
| C | 115.00 | 5.00 | 5.00 | 125.00 | x | 2.00 | 250.00 | | | | | |
| | | | | | | 177.50 | 24,280.00 | | 10% $ | 26,708.00 | 1.47 = $ | 39,260.76 |

## APPENDIX D—Continued

Page 2

| PHASE | UNADJUSTED "CUSTOMARY" FEE | PRECLUSION OF OTHER EMPLOYMENT | CASE UNDESIRABILITY | HOURLY FEE BEFORE MULTIPLIERS | | HOURS | LODESTAR AMOUNT | CONTINGENCY MULTIPLIER | EXCEPTIONAL RESULTS MULTIPLIERS | TOTAL FEE BEFORE INFLATION ADJUSTMENTS | DELAY IN RECEIPT OF PAYMENT MULTIPLIER ADJUSTMENT | TOTAL FEE AWARD AFTER AFTER ADJUSTMENT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Phase VIII | | | | | | | | | | | | |
| 08/07/82– A | $225.00 | $ | $ | $ 225.00 | x | 29.55 | 6,205.50 | | | | | |
| 11/04/86 B | 215.00 | | | 215.00 | x | 29.55 | 6,205.50 | | | | | |
| C | 210.00 | | | 210.00 | x | | | | | $  6,205.50 | 1.17 = $ | 7,260.44 |
| Phase XI | | | | | | | | | | | | |
| 11/05/86– A | $225.00 | $ | $ | $ 225.00 | x | 28.00 | 6,020.00 | | | | | |
| 02/24/87 B | 215.00 | | | 215.00 | x | 40.30 | 8,463.00 | | | | | |
| C | 210.00 | | | 210.00 | x | 68.30 | 14,483.00 | | | $ 16,483.00 | 1.04 = $ | 15,082.32 |
| TOTAL "MERITS" AWARD BEFORE ADJUSTMENT FEE LITIGATION | | | | | | 1,194.35 | $118,853.00 | | | $ 104,063.50 | | $ 284,139.72 |
| Attorney Fees: | | | | | | | | | | | | |
| 10/26/85– 11/04/86 | $215.00* | | | $215.00 | x | 669.60 | 143,964.00 | | | $ 143,964.00 | 1.07 = $ | 154,041.48 |
| Attorney Fees: | | | | | | | | | | | | |
| 11/05/86 02/24/87 | $215.00* | | | $215.00 | x | 439.75 | $ 94,546.25 | | | $  94,546.25 | 1.04 = $ | 98,328.10 |
| TOTAL FEE LITIGATION AWARD BEFORE ADJUSTMENT FOR INFLATION | | | | | | 1,109.35 | $238,510.25 | | | $ 236,510.2 | | $ 252,369.58 |
| TOTAL FEE AWARD ON MERITS AND ATTORNEYS FEES | | | | | | 2,303.70 | $357,363.25 | | | $ 362,573.75 | | $ 536,509.30 |

A – Trial and Trial Preparation
B – Legal Research and Related work
C – Conferences, communications and Monitoring

* From information supplied, $225.00 proposed hourly rate was averaged